# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ALEJANDRO JORGE-CHAVELAS**                     **CIVIL ACTION**
**and ALFREDO MORENO-ABARCA**
      **Plaintiffs**

**VERSUS**                                       **3:15-CV-00657-JWD-EWD**

**LOUISIANA FARM BUREAU CASUALTY**
**INSURANCE COMPANY, et al.**
      **Defendants**

## RULING AND ORDER

### *Introduction*

      This is a personal injury case involving serious injuries suffered by plaintiffs Alejandro Jorge-Chavelas ("Jorge-Chavelas") and Alfredo Moreno-Abarca ("Moreno-Abarca") (collectively "Plaintiffs"). Plaintiffs sued Harang Sugars, LLC ("Harang Sugars"); Lee Harang ("Harang"), the majority owner of Harang Sugars; Calvin Smith ("Smith"), an employee of Harang Sugars; and Harang Sugars' liability insurers Louisiana Farm Bureau Casualty Insurance Company and Louisiana Farm Bureau Mutual Insurance Company (collectively "Farm Bureau"). This Court has jurisdiction because Plaintiffs are Mexican nationals, all defendants are citizens of Louisiana, and the amount in controversy exceeds $75,000, exclusive of interest and costs.[1]

      The underlying facts giving rise to Plaintiffs' injuries are not in dispute. On August 14, 2015, during a sugarcane planting operation, Harang Sugars' employee Smith negligently drove a tractor into the rear of a cane cart on which Plaintiffs were riding. Plaintiffs, payroll employees of Lowry Farms, Inc. ("Lowry Farms"), were injured.[2]

---

[1] 28 U.S.C. §1332; Plaintiffs' Proposed Findings of Fact and Conclusions of Law ("PPFFCOL"), ¶ 98, Doc. 80 at 17; Defendants' Proposed Findings of Fact and Conclusions of Law ("DPFFCOL"), ¶ 66, Doc. 79 at 12.
[2] Stipulation of Parties ("Stipulation"), Doc. 78 at 3–5.

The primary issue before the Court is Plaintiffs' status. If Plaintiffs are employees or independent contractors involved in manual labor for Harang Sugars, as Farm Bureau contends, Plaintiffs' exclusive remedy against Harang Sugars is workers' compensation, and they have no tort remedy against any of the Defendants. Furthermore, there would be no coverage under the two Farm Bureau policies. If, on the other hand, Plaintiffs are employees of Lowry Farms, and not employees of Harang Sugars or independent contractors doing manual labor for Harang Sugars, as Plaintiffs and Harang Sugars maintain, then Plaintiffs have a viable tort remedy against Defendants, and Farm Bureaus' policies would provide coverage for the accident.

For the reasons which follow, the Court finds that Plaintiffs were, at the time of the accident, employees of Lowry Farms only and not employees (outright, borrowed, dual or joint) of Harang Sugars and were not, within the meaning of Louisiana law, independent contractors doing manual labor for Harang Sugars. The Court finds the two Farm Bureau policies provide coverage for the accident. Given the stipulation regarding Smith's fault and the amount of damages suffered,[3] judgment is rendered in favor of Plaintiffs in the amount stipulated among the parties.

### The Players

Plaintiffs Jorge-Chavelas and Moreno-Abarca are Mexican nationals who were at all relevant times temporarily and legally residing in Louisiana as "H-2A workers" under the authority of 8 U.S.C. § 1101, *et seq.* and the regulations promulgated pursuant thereto, 20 C.F.R. 655.100, *et seq.*[4]

---

[3] *Id.*
[4] PPFFCOL, ¶¶ 1–2, Doc. 80 at 1.

Defendant Harang Sugars is a Louisiana limited liability company whose members are natural persons and citizens of Louisiana. Defendant Harang is a citizen of Louisiana and is the majority owner of Harang Sugars.[5] Defendant Smith is also a citizen of Louisiana who was an employee of Harang Sugars and was driving the tractor that struck and injured Plaintiffs.[6]

Defendant Louisiana Farm Bureau Casualty Insurance Company is a Louisiana insurance company which issued Farm Liability Policy No. GF111187 to Harang Sugars.[7] Defendant Louisiana Farm Bureau Mutual Insurance Company is a Louisiana insurance company which issued Umbrella Policy No. UM807963 to Harang Sugars.[8]

Non-party Lowry Farms is an Arkansas–based company which contracted with Harang Sugars to "provide 21 workers from July 15, 2015 to October 20, 2015 to plant sugar on [Harang Sugars'] farm."[9] Intervenor, American Interstate Insurance Company ("American Interstate"), is the workers' compensation insurer for Lowry Farms.[10] Non-party, Louisiana Workers' Compensation Commission ("LWCC"), issued a policy of workers' compensation insurance to Harang Sugars, which was in full force and effect at the time of the subject accident.[11]

### Procedural History

Plaintiffs filed this lawsuit on October 5, 2015, alleging that on August 14, 2015 they were working as employees of Lowry Farms when Harang Sugars' employee Smith drove a tractor into the back of a cane cart on which Plaintiffs were sitting, seriously injuring both Plaintiffs.[12]

---

[5] DPFFCOL, ¶ 11, Doc. 79 at 4.
[6] PPFFCOL, ¶ 6, Doc. 80 at 1; DPFFCOL, ¶ 10, Doc. 79 at 4.
[7] Louisiana Farm Bureau Casualty Insurance Co. Farm Liability Policy ("Liability Policy"), Ex. 27, TRIAL000804–851; DPFFCOL, ¶ 12, Doc. 79 at 5.
[8] Louisiana Farm Bureau Mutual Insurance Co. Umbrella Policy ("Umbrella Policy"), Ex. 28, TRIAL000852–875; DPFFCOL, ¶ 13, Doc. 79 at 5.
[9] Lowry Farms Agreement with Harang Sugars ("Agreement"), Ex. 23, TRIAL000625.
[10] DPFFCOL, ¶ 15, Doc. 79 at 5.
[11] Louisiana Workers Compensation Corporation Policy ("LWCC Policy"), Ex. 30, TRIAL000876–903.
[12] Complaint Against All Defendants ("Complaint"), Doc. 1 at 1–3.

Plaintiffs named as defendants (1) Smith; (2) Smith's employer, Harang Sugars, and; (3) Harang Sugar's liability insurers, Farm Bureau.[13]

On November 17, 2015, the Plaintiffs filed their First Amended Complaint,[14] adding alternative claims against Harang, the principal of Harang Sugars, in his personal capacity, and Harang Sugars. There, Plaintiffs alleged that, in the event it was found that Plaintiffs were employees of Harang Sugars, then Defendants were liable to Plaintiffs for breach of contract, violation of the Fair Labor Standards Act, and violation of the Louisiana Wage Payment Law (La. Rev. Stat. Ann. § 23:631, *et seq.*). Plaintiffs later dismissed these alternative claims.[15]

American Interstate, the workers' compensation insurer for Lowry Farms, filed a Petition for Intervention on January 12, 2016 against all parties to the suit alleging subrogation rights for amounts paid to or on behalf of Plaintiffs under its worker's compensation policy.[16]

Plaintiffs filed a Motion for Partial Summary Judgment on Farm Bureaus' Borrowed Employee Defenses[17] which was supported by Defendants Harang Sugars, Harang and Smith.[18] Only Farm Bureau opposed the motion.[19] Farm Bureau filed its own Motion for Summary Judgment on Claims of Plaintiffs and Intervenor[20] which was opposed by Plaintiffs[21] as well as Defendants Harang Sugars, Harang and Smith[22] and Intervenor American Interstate.[23] Oral

---

[13] Complaint, Doc. 1 at 1–3; PPFFCOL, ¶ 9, Doc. 80 at 2.

[14] First Amended Complaint ("Amended Complaint"), Doc. 10 at 5–9; PPFFCOL, ¶ 10, Doc. 80 at 2; DPFFCOL, ¶ 4, Doc. 79 at 3.

[15] Stipulation, Doc. 78 at 4–5.

[16] Complaint of Intervention by American Interstate Co. ("Intervention by American Interstate Co."), Doc. 31.

[17] Plaintiff's Motion for Partial Summary Judgment ("Plaintiff PSJ"), Doc. 25.

[18] Harang Sugars Support for Partial Summary Judgment ("Harang Support for PSJ"), Doc. 39. Harang Sugars has consistently agreed with Plaintiffs that it was not Plaintiffs' employer and that Plaintiffs remained at all times employees only of Lowry Farms. Farm Bureau alone asserts that Plaintiffs are barred from recovering because they were injured by a fellow servant and/or because employment-related coverage exclusions in Farm Bureau's policies apply to exclude coverage for the damages Plaintiffs claim. PPFFCOL, ¶ 11, Doc. 80 at 2.

[19] Opposition to Partial Summary Judgement by Farm Bureau ("Opposition to PSJ"), Doc. 37.

[20] Motion for Summary Judgment by Farm Bureau ("MSJ by Farm Bureau"), Doc. 33.

[21] Plaintiff's Opposition to Summary Judgement ("Plf. Opposition to MSJ"), Doc. 48

[22] Harang Sugars Opposition for Summary Judgement ("Harang Opposition to MSJ"), Doc. 53.

[23] American Interstate Co. Opposition for Summary Judgment ("American Interstate Co. Opposition for SJ"), Doc.

argument was heard on both motions on February 9, 2017[24] and both motions were denied on March 27, 2017.[25]

On April 27, 2017 the parties entered into an extensive stipulation in open court.[26] They agreed that Harang Sugars was solely at fault for Plaintiffs' bodily injuries and that the bodily injuries to Plaintiffs collectively equaled $2.5 million (the amount of the applicable limits of the two Farm Bureau policies). Plaintiffs would look only to Louisiana Farm Bureau for the payment of judgment, if any. Plaintiffs stipulated that in the event the Court determined judgment should be entered in their favor, the judgment should award $1,937,500 to Alejandro Jorge-Chavelas and $562,500 to Alfredo Moreno-Abarca. All other claims for damages, including the FLSA claims, would be dismissed. They agreed the case would be tried solely on the issue of Harang Sugars' immunity and/or the applicability of Farm Bureau's employment-related coverage exclusions and unless Farm Bureau prevailed on the foregoing immunity/coverage defenses, Farm Bureau would pay the full amount of the stipulated damages plus interest and costs as allowed by law. The parties agreed the case would be tried as a bench trial, without live testimony but instead on stipulations, depositions, and exhibits admitted into evidence.[27]

The bench trial was held on July 10, 2017[28] following which the Court requested for additional briefs, asking the parties to respond to each other's Proposed Finding of Fact and Conclusions of Law. These were filed on July 25, 2017[29] and the matter was submitted.

---

49.

[24] Minutes of Motion Hearing for Partial Summary Judgment by Plfs. and Motion for Summary Judgment by Def., Doc. 73.

[25] Ruling and Order Denying Plfs. Motion for Partial Summary Judgment and Def. Motion for Summary Judgment, Doc. 71.

[26] Stipulation, Doc. 78; *See also*, DPFFCOL, ¶ 8, Doc. 79 at 4; PPFFCOL, ¶¶ 13–15, Doc. 80 at 2–3.

[27] *Id*.

[28] Minute Entry for Bench Trial, Doc. 81.

[29] Defendants' Response to Plaintiffs' Proposed Findings of Fact and Law ("Def. Response to PPFFCOL"), Doc. 82; Plaintiffs' Response to Defendants' Proposed Findings of Fact and Law ("Plf. Response to DPFFCOL"), Doc. 83.

### *Factual Background – Harang Sugars and Sugarcane Planting*

Harang Sugars is a family-run farming corporation in Donaldsonville, La. which owns and leases farmlands to plant, grow, harvest and sell sugar cane.  It farms nearly 5000 acres of sugar cane, regularly harvesting approximately 4000 acres of sugar cane which is delivered to a sugar mill each year.[30]  Harang is the majority owner and the person in charge of the day-to-day operations of Harang Sugars.

Farming sugar cane is a year-round enterprise which involves multiple different phases that are important to a successful crop.[31]  The planting phase is an important part of Harang Sugars' business because once it is completed, it must live with the results of the planting for the four or five year cycle involved in growing sugar cane.[32] The sugar cane planting season lasts for one to two months depending on the weather.[33]

In Louisiana, sugarcane is still routinely planted by the "hand-planting" method, which sugarcane farmers find to be superior to that done by machine because less seed cane is used. This results in more cane going to the sugar mill and higher profits. The hand-planting process involves the use of a large tractor which pulls a "cane cart," loaded with sugarcane, up and down rows of a field.  Three "cane planters" follow on foot behind the cart, pulling stalks of sugarcane from the cart and laying them in the furrows. It is hoped that a new cane crop will sprout from the joints of the planted stalks.  Cane planting is considered unskilled manual labor.[34]

---

[30] Dep. of Harang & Harang Sugars, p. 17, ln. 2–19, Ex. 34, TRIAL000017.
[31] *Id.*, p. 181, ln. 17–20, Ex. 34, TRIAL000181.
[32] *Id.*, p. 181, ln. 21–25, p. 182, ln. 1, Ex. 34, TRIAL000181–182.
[33] *Id.*, p. 98, ln. 11–25, p. 99, ln. 1-3, Ex. 34, TRIAL000098–99.
[34] *Id.*, p. 183, ln. 11–13, Ex. 34, TRIAL000183; Dep. of Jorge-Chevelas, p. 66, ln. 3–16, Ex. 36, TRIAL000695; Dep. of Moreno-Abarca, p. 26, ln. 19–25, p. 27, ln. 1–24; p. 31, ln. 19–25, p. 32, ln. 1–7, Ex. 37, TRIAL000736–737, 741–742; Dep. of Gonzales, p. 43, ln. 20–21, Ex. 38, TRIAL000794.

Hand planting is a labor intensive process, and, therefore, Harang Sugars' need for additional labor increases dramatically during the planting season. Twenty-one (21) additional laborers were necessary to hand plant sugar cane on Harang Sugars's farm in 2015. Sugarcane farm owners rarely have their own employees plant the cane.[35] Instead, sugarcane farmers usually contract with a planting service to plant the sugarcane over the few weeks of the planting season. One such sugarcane planting service is non-party Lowry Farms, an Arkansas company who employed Plaintiffs.[36]

***Lowry Farms***

Lowry Farms is located in Hermitage, Arkansas.[37] Clay Lowry is the president, operator, and manager of Lowry. Renee Ferrell is Lowry Farm's office manager and farmer liaison.[38] Unlike the clients it serves, Lowry Farms is not in the business of growing and selling sugarcane for profit[39] but, rather, is in the business of planting sugarcane.[40]

In 2015, Lowry Farms had 70 sugarcane farmer clients in Louisiana.[41] Lowry charged its clients on a per-acre (as opposed to per cane-planter or per hours worked) basis, without regard to how long it took to plant the cane.[42] Lowry Farms would confer with its clients before the cane planting season to determine when the client wanted to begin planting and the number of tractors

---

[35] *Id.*, p. 183, ln. 11–13, Ex. 34, TRIAL000183; Dep. of Jorge-Chevelas, p. 66, ln. 3–16, Ex. 36, TRIAL000695; Dep. of Moreno-Abarca, p. 26, ln. 19–25, p. 27, ln. 1–24; p. 31, ln. 19–25, p. 32, ln. 1–7, Ex. 37, TRIAL000736–737, 741–742; Dep. of Gonzales, p. 43, ln. 20–21, Ex. 38, TRIAL000794.
[36] Dep. of Lowry Farms, p. 15, ln. 14 –22, p. 51, ln. 15–21, Ex. 35, TRIAL000425, 461
[37] *Id.*, p. 51, ln. 12–14, Ex. 35, TRIAL000461.
[38] *Id.*, p.8–11, Ex. 35, TRIAL000418–21.
[39] *Id.*, p. 114, ln. 6–9, Ex. 35, TRIAL000524.
[40] *Id.*, p. 15, ln. 14 –22, p. 51, ln. 15–21, Ex. 35, TRIAL000425, 461.
[41] *Id.*, p. 17, ln. 3–10, Ex. 35, TRIAL000427.
[42] *Id.*, p. 24, ln. 16–25, p. 25, ln. 1–13, p. 49, ln. 3–19, p. 73, ln. 9–25, p. 74, ln. 1–10, Ex. 35, TRIAL000434–35, 459, 483–485.

and tractor drivers the client had – and therefore determine the ideal number of cane planters for each farm.[43]

A crew leader and/or straw boss, Lowry Farms employees, would accompany the Lowry Farms cane planters to the job site, and remain there to guide and direct their work. When the work was completed at the end of each day, Lowry Farms employees would provide transportation for its workers to a temporary housing site.[44]

***Lowry Farms' H-2A employees***

Lowry Farms, through the United States Department of Labor's H-2A procedure, hired Mexican nationals to perform the cane planting work. Lowry Farms recruited, vetted, and hired the cane planters, and then brought them to the United States.[45] Lowry's H-2A workers were seasonal employees who remained employed with Lowry Farms only as long as the planting season required. Lowry Farms paid the cane planters an hourly wage and provided them with workers' compensation insurance.[46]

A written contract – denominated "General Disclosure and Terms of Employment" – governed the relationship between Lowry Farms and its H-2A seasonal employee cane planters. The Terms of Employment document provided, in relevant part, that:

> "Workers are hired by [Lowry Farms] on a contract basis for hand planting sugar cane as well as any other general farm labor needed[;] The employees will be employed from the time their contract begins until all cane under contract is planted[;] Employees are provided with Workers Compensation Insurance[;] Employees will be required to work all hours as directed by Lowry Farms management personnel[;] Wage rate is applicable prevailing hourly wage rate or greater for the location in which they are working[;] Paychecks will be issued to employees weekly at the job site and no later that [sic] the second Tuesday following the end of the work week. Individuals no longer employed by [Lowry Farms] will have checks mailed

---

[43] *Id.*, p.16, ln. 3–13, p. 23, ln. 3–19, p. 74–76, Ex. 35, TRIAL000426, 433, 484–486.
[44] *Id.*, p. 57, ln. 10–25, p. 58, ln. 1–24, Ex. 35, TRIAL000467–468.
[45] *Id.*, p. 16, ln. 5–13, p. 21, ln. 21–25, p. 26, ln. 10–16, p. 32, ln. 5–16, Ex. 35, TRIAL000426, 432, 436, 442.
[46] *Id.*, p. 34, ln. 8–14, p. 58, ln. 25, p. 59, ln. 1–3, Ex. 35, TRIAL000444, 468–69.

to [sic] upon verification and as instructed[;] [Lowry Farms] provides transportation from Mexico to the job location[;] Wage rate is applicable prevailing hourly wage rate or greater for the location in which they are working." [47]

The Terms of Employment document also provided each cane-planter employee with the office telephone number of Lowry Farms and the cellular telephone number of Clay Lowry, owner of Lowry Farms.[48]

In 2015, Lowry filed an H-2A Application for Temporary Employment Certification as an "H-2A Labor Contractor or Job Contractor" under Case # H-300-15154-200848 requesting 308 workers for the period of July 21, 2015 to October 20, 2015.[49]

Also essential to Lowry Farms' operations were its Crew Leader/Recruiters. In addition to the seasonal H-2A employees Lowry Farms hired, Lowry Farms also maintained four resident Crew Leader/Recruiter employees who were based in Arkansas but came to Louisiana for the planting season.[50] A written Crew Leader/Recruiter Contract governed the relationship between Lowry Farms and its Crew Leader/Recruiters and set out the following duties they were to perform: (1) Recruit workers for Lowry Farms, Inc. contracts; (2) Have workers report to the consulate on the date directed for the visa appointment; (3) Oversee workers in the fields; (4) Report hours and production for each worker; (5) Settle disputes between workers; (6) Communicate with the Farmers; (7) Transport or arrange transportation of workers to and from the grocery store and laundry mat; (8) Transport or see to the transportation of any injured worker to a doctor or hospital; (9) Report any accidents or injuries to the office immediately; (10) Transport or see to the

[47] Lowry Farms General Disclosure and Terms of Employment ("Lowry Discl. & Terms of Employ."), Ex. 2, TRIAL000295; *see also* Dep. of Lowry Farms., p. 53, ln. 4–25, Ex. 35, TRIAL000463.
[48] Lowry Discl. & Terms of Employ., Ex. 2, TRIAL000295.
[49] H–2A Application for Temporary Employment Certification ("H–2A Application"), Ex. 32, TRIAL000904–940.
[50] Dep. of Lowry Farms, pp. 11–13, p. 50, ln. 24–25, p. 51, ln. 1–20, Ex. 35, TRIAL000421–22, 461.

transportation of workers when job is complete to the next job or the bus station for the return trip to Mexico. [51]

Lowry Farms divided all of its sugarcane farmer clients among the four Lowry Farms Crew Leader/Recruiters, and each Crew Leader/Recruiter was responsible for servicing all of the farms assigned to him.[52] Lowry Farms paid each Crew Leader/Recruiter based on the number of acres of sugarcane that the crew of each Crew Leader/Recruiter planted.[53]

The Lowry Farms Crew Leader/Recruiters traveled to Mexico to recruit and vet the seasonal employees, assist the employees with the visa process, transport the employees to Louisiana, determine (in the Crew Leader/Recruiter's sole discretion) each employee's farm assignment, and made sure each employee got to his assigned farm.[54] Each Crew Leader/Recruiter then trained his crew members how to properly plant the cane, supervised his crews until the completion of all Lowry Farms' cane planting contracts, and secured the crew members' transfer to another farm, or – if all cane had been planted – back to Mexico.[55]

Often a Crew Leader/Recruiter engaged experienced workers as assistant supervisors, or "straw bosses," to assist leading the crew while the Crew Leader/Recruiter was working at one of the other farms under his charge.[56]

### H-2A Regulations and Definitions

---

[51] Lowry Farms Crew Leader/Recruiter Contract ("Lowry Crew Leader Contract"), Ex. 4, TRIAL000298–99; *See also* Dep. of Lowry Farms, p. 28, ln. 18–23, Ex. 35, TRIAL000438.
[52] Dep. of Lowry Farms, p. 19, ln. 3–25, p. 20, ln. 1–18, p. 25, ln. 21–25, Ex. 35, TRIAL000429–30, 435.
[53] *Id.*, p. 48, ln. 10–24, Ex. 35, TRIAL000458.
[54] *Id.*, p. 21, ln. 19–25, p. 22, ln. 1–16, p. 49, ln. 20–25, p. 50, ln. 1–25, p. 51, ln. 1–4, Ex. 35, TRIAL000431–432, 459–461, 466.
[55] Dep. of Harang & Harang Sugars, p. 66, ln. 14–25, p. 67, ln. 1–3, Ex. 34, TRIAL00066–67; Dep. of Lowry Farms, p. 24, ln. 7–15, p. 42, ln. 4–19, p. 82, ln. 7–25, p. 83, ln. 1–10, Ex. 35, TRIAL000434, 452, 492–93; Dep. of Jorge-Chevlas, p. 11, ln. 9–24, p. 68, ln. 12–19, Ex. 36, TRIAL000640, 697.
[56] Dep. of Lowry Farms, p. 12, ln. 6–25, p. 13, ln. 1–10, p. 45, ln. 16–25, Ex. 35, TRIAL000422–423, 455.

Plaintiffs were in the United States on an H-2A visa, which is administered through the Department of Labor. Here, Lowry Farms – as Plaintiffs' prospective (and later actual) employer – was the applicant for the temporary job certification, not Harang Sugars.[57] Lowry Farms tendered job offers (Lowry Farms used the term "work disclosures") which complied with 20 C.F.R. 655.122, including a statement that Lowry Farms was providing worker's compensation insurance coverage for these workers, a Department of Labor requirement.[58]

***Lowry Farms' Worker's Compensation Insurer: Intervenor American Interstate***

The workers' compensation secured by Lowry Farms in effect on the date of Plaintiffs' injuries was issued by American Interstate Insurance Company ("Intervenor").[59] On June 9, 2016, Intervenor filed a Complaint of Intervention[60] naming Plaintiffs, Lee Harang, Smith, and Farm Bureau as defendants.[61] Intervenor represents that it has covered Plaintiffs' medical expenses through its workers' compensation policy, "and [it] may be liable to pay future workers' compensation benefits and medical expenses. The duration and amount of said expenses is uncertain."[62] Intervenor has adopted Plaintiffs' position that (1) at the time of their injuries, Plaintiffs were employees of Lowry Farms only and (2) that Plaintiffs are entitled to recover in tort against Harang Sugars, Smith and Farm Bureau.[63]

***Facts Leading up to Accident***

Harang Farms contracted with Lowry Farms to provide 21 workers from July 15, 2015 through October 20, 2015 to plant sugar cane…"[64] Lowry Farms placed its client Harang Sugars

---

[57] *Id.*, p. 95, ln. 19–25, p. 98, ln. 1–15, Ex. 35, TRIAL000505, 508.
[58] *Id.*, p. 187, ln. 6–23, Ex. 35, TRIAL000587; Lowry Discl. & Terms of Employ., Ex. 2, TRIAL000295–296.
[59] Intervention by American Interstate Co., Doc. 31 at 2.
[60] *Id.*
[61] *Id.*, at 1.
[62] *Id.*, at 2.
[63] American Interstate Co. Opposition for SJ, Doc. 49 at 1.
[64] Agreement, Ex. 23, TRIAL000625.

in the group of farms under the charge of Delfino Castillo ("Castillo"),[65] one of Lowry Farms' Crew Leader/Recruiters.[66] In 2015, Castillo was responsible for 15-22 of Lowry Farms' other clients as well.[67]

Castillo enlisted Jose Luis Hernandez ("Hernandez") and Serafin Torres, a/k/a "El Pajaro" or "the Bird," ("Torres") to be his assistant supervisors or "straw bosses."[68] Castillo recruited Plaintiffs to hand-plant cane at the various farms under Castillo's charge during the 2015 season.[69] Castillo and Renee Ferrell assisted Plaintiffs in securing H-2A visas and transported Plaintiffs to Louisiana in late July 2015.

When Plaintiffs arrived in Louisiana, Plaintiffs' first job assignment from Castillo was at Harang Sugars. There, Castillo's assistant supervisor Hernandez instructed Plaintiffs how to hand plant the sugar cane and generally acted as Plaintiffs' boss. From Plaintiffs' arrival in late July until August 14, Hernandez provided the direct supervision to Plaintiffs.[70]

On August 14, 2015, Plaintiffs were sitting on the back of a cane cart when Harang Sugars employee Smith drove his tractor into the back of the cart on which Plaintiffs were sitting, crushing Plaintiffs' legs. Smith's fault is stipulated.[71]

*Issues*

Although Plaintiffs were indisputably payroll employees of Lowry Farms, Farm Bureau nonetheless claims their insured is immune from tort suit under Louisiana's worker's

---

[65] Lowry Farms Payroll Sheet, Ex. 24, TRIAL000628.
[66] Dep. of Lowry Farms, p. 11, ln. 22–25, p. 12, ln. 1–25, p. 13, ln. 1–10, Ex. 35, TRIAL000421–23; Lowry Crew Leader Contract, Ex. 4, TRIAL000298–99.
[67] *Id.*, p. 45, ln. 17–25, p. 46, ln. 1–7, Ex. 35, TRIAL000455–56.
[68] *Id.*, p. 13, ln. 2–10, p. 44, ln. 9–20, Ex. 35, TRIAL000423, 454.
[69] Dep. of Jorge-Chevlas, p. 15, ln. 3–25, p. 16, ln. 1–3, p. 51, ln. 12–25, p. 52, ln. 1–13, Ex. 36, TRIAL000644–45, 680–681; Dep. of Moreno-Abarca, p. 26, ln. 5–10, Ex. 37, TRIAL000736.
[70] Dep. of Jorge-Chevlas, p. 11, ln. 4–24, p. 13, ln. 24–25, p. 16, ln. 14–17, p. 36, ln. 9–11, p. 54, ln. 4–16, p. 68, ln. 17–19, Ex. 36, TRIAL000640, 643, 646, 665, 683, 697.
[71] Stipulation, Doc. 78 at 3–5.

compensation laws urging several alternative theories: first, that Plaintiffs were the presumed employees of Harang Sugars under La. Rev. Stat. Ann. § 23:1044 and Plaintiffs have failed to rebut that presumption; second, that Plaintiffs were independent contractors engaged in manual labor within the meaning of La. Rev. Stat. Ann. § 1021(7); third, that Plaintiffs were Harang Sugars' borrowed servants; fourth, that Harang Sugars was a special or joint employer of Plaintiffs under La. Rev. Stat. Ann. § 23:1031(c) and/or by virtue of regulations promulgated by the U.S. Department of Labor and codified in relevant provisions of the Fair Labor Standards Act, ("FLSA").[72] A related issue, but one not advanced by Farm Bureau, is whether Plaintiffs were the statutory employees of Harang Sugars under La. Rev. Stat. Ann. § 23:1061. Finally, related to all of the above issues are the coverage defenses asserted by Farm Bureau.

Only Farm Bureau maintains that, under one of these theories, Plaintiffs were employees of Harang Sugars and therefore Harang Sugars is immune from this tort claim and Farm Bureau does not provide coverage for this loss. Harang Sugars, Intervenor and Plaintiffs, on the other hand, have maintained throughout this litigation that Harang Sugars was not the special[73] or borrowing employer of Plaintiffs and that Harang Sugars had no control over the cane planters, including Plaintiffs; had no right to select, hire or fire them; and had no obligation to pay them. Further, they contend the contract with Lowry Farms provided nothing to the contrary. Instead, they maintain that Lowry Farms was at all times the sole employer of Plaintiffs, that only Lowry Farms had the right to control, select, hire or fire and the obligation to pay and provide workers compensation

---

[72] Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*

[73] The term "special employer" is codified in La. Rev. Stat. Ann. § 22:1031(C). Both sides agree that the test to determine special employer status is essentially the same, if not identical, to the test for "borrowing employer" status. PPFFCOL, ¶ 121, Doc. 80 at 22; DPFFCOL, ¶ 97, Doc. 79 at 24. Nonetheless, to avoid confusion and because Farm Bureau has used FLSA regulations to bolster its special employer arguments, the Court has treated these issues separately.

coverage for Plaintiffs. They insist there was no contract with Harang Sugar, express or implied, to the contrary.

***Applicable Law***

Where jurisdiction is founded on diversity, federal courts must apply the substantive law of the forum state.[74] Stated more specifically, where, as here, there are no Louisiana Supreme Court cases on point, the Court must make an *Erie* guess by predicting how the Louisiana Supreme Court would rule. In making an *Erie* guess, the Court relies on the following: (1) decisions of the [Louisiana] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Louisiana] Supreme Court decisions on related issues, (3) dicta by the [Louisiana] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Louisiana] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.[75]

In the context of Louisiana law, the Court must follow the civilian method in carrying out this task.[76] This approach is followed because in Louisiana, jurisprudence is considered a secondary source of law, and the federal court is not bound by Louisiana appellate court opinions, particularly if there is "persuasive data that the highest court of the state would decide otherwise."[77] Accordingly, the Western District has observed the civilian methodology requires examination of

---

[74] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938*); James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (citing *Westlake Petrochems., L.L.C. v. United Polychem., Inc.*, 688 F.3d 232, 238 n.5 (5th Cir. 2012)); *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.,* 352 F.3d 254, 260 (5th Cir. 2003); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997).

[75] DPFFCOL, ¶ 76, Doc. 79 at 16–17; *Gulf & Mississippi River Transp. Co. v. BP Oil Pipeline Co.,* 730 F.3d 484, 488–89 (5th Cir. 2013) (applying Louisiana substantive law); s*ee also Pure Air Daigle, L.L.C., v. Stagg*, No. 6:16-cv-013222017, WL 4020981, at *3 (W.D. La., Sept. 15, 2017) (applying Louisiana substantive law and same seven factors from *Gulf & Mississippi River Transp. Co.*).

[76] *See Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003); *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169 (5th Cir. 1999); *Stewart v. Ruston Louisiana Hosp. Co.,* No. 14-83, 2016 WL 1715192 at *3 (W.D. La. Apr. 27, 2016).

[77] *Am. Int'l Specialty Lines Ins. Co.,* 352 F.3d at 260–61.

primary sources, if available on the given issue, prior to relying on lower court jurisprudence in order to make an "Erie guess."[78]

***Were Plaintiffs the Presumed Employees of Harang Sugars?***

Under Louisiana law, workers' compensation is generally the exclusive remedy for an employee injured at the workplace.[79] A prerequisite to workers' compensation coverage "is the existence of an employer-employee relationship," which is ordinarily evidenced by the following four factors: "1) selection and engagement, 2) payment of wages, 3) power of dismissal, and 4) power of control. No single factor is determinative, but the totality of the circumstances must be considered."[80]

La. Rev. Stat. Ann. § 23:1044 provides that "[a] person rendering service for another in any trades, businesses or occupations covered by [the Louisiana Workers Compensation Act "LWCA"] is presumed to be an employee under the [the LWCA]."  This presumption is available to an employer and its insurer and, argues Farm Bureau, allows it in this case to claim the benefit of La. Rev. Stat. Ann. § 23:1032's immunity to Plaintiffs' tort claim.[81]

But the presumption of employee status under 1044 may be rebutted by a showing of any one of the following: (1) that the services rendered were not subject to any trade, business, or occupation covered by the LWCA; (2) that the individual was performing services as an independent contractor not engaged in manual labor; or (3) upon proof that there was no contract of employment, either express or implied, between the alleged employer and employee.[82]

---

[78] *Stewart*, 2016 WL 1715192 at *3.
[79] La. Rev. Stat. Ann. §§ 23:1032(A)(1)(a) and (B); *see also Grant v. Tulane Univ.*, No. 00-3465, 2001 WL 245785 at *1 (E.D. La. Mar. 9, 2001) (citing *Dustin v. DHCI Home Health Servs., Inc.*, 95-1989, p. 3 (La. App. 1 Cir. 5/10/96); 673 So. 2d 356, 358).
[80] *Campora v. Falstaff, L.L.C.*, 01-2014, p. 4 (La. App. 4 Cir. 6/12/02); 823 So. 3d 389, 392 (citing *Jordan v. Cent. Mgmt. Co.*, 99-0748, p. 7 (La. App. 3 Cir. 10/13/99); 745 So. 2d 116, 120).
[81] DPFFCOL, ¶ 71, Doc. 79 at 15; *Brown v. Zurich Am. Ins. Co.*, 2007-353 (La. App. 3 Cir. 10/3/07); 966 So. 2d 1160, 1163, *writ denied*, 2007-2139 (La. 1/7/08); 973 So. 2d 728.
[82] *See, e.g., Sanders v. Dillard Univ.*, No. 14-845, 2014 WL 7342440, at *9 (E.D. La. Dec. 23, 2014) (citing *Campora*,

Plaintiffs argue it is the third factor that is fatal to the presumption that Plaintiffs were employees of Harang Sugars because there was no express or implied contract between Plaintiffs and Harang Sugars. Rather, the only two operative contracts in this case were between Plaintiffs and Lowry Farms, and between Lowry Farms and Harang Sugars. Furthermore, the contract between Harang Sugars and Lowry Farms indicates that both parties to the contract envisioned that Plaintiffs would at all times remain the employees of Lowry Farms. Because there was no contract between Plaintiffs and Harang Sugars, Plaintiffs contend they have successfully rebutted any presumption they were employees of Harang Sugars under La. Rev. Stat. Ann. § 23:1044.[83]

Farm Bureau counters that that Plaintiffs failed to rebut this presumption because, while there may have been no express contract between Harang Sugars and Plaintiffs, there was an *implied* contract between them,[84] thus rebutting the presumption.[85] In support of this contention, Farm Bureau urges that, because Plaintiffs were planting Harang Sugars' sugar cane on Harang Sugars' property in furtherance of Harang Sugars' business of sugar cane farming, they are presumed to be employees of Harang under La. Rev. Stat. Ann. § 23:1044.[86]

But this does not prove an express or implied contract between Plaintiffs and Harang Sugars, and, indeed, the evidence shows there was no such contract. Plaintiffs were at all times payroll employees of Lowry Farms and, as discussed elsewhere in this ruling, never left the direction, supervision and control of Lowry Farms. The only operative contracts in this case were between Plaintiffs and Lowry Farms and Lowry Farms and Harang Sugars. Plaintiffs are correct

---

01-2014 at p. 4; 823 So. 3d at 392; *Hillman v. Comm-Care, Inc.*, 01-1140, p. 6 (La. 1/15/02); 805 So. 2d 1157, 1161); *Wilfred v. A. Serv. Cab.* Co., 14-1211, p. 3–4 (La. App. 4 Cir. 5/27/15); 171 So. 3d 1007, 1010 (citing *Whitlow v. The Shreveport Times*, 02-1215, p. 2 (La. App. 3 Cir. 4/23/03); 843 So. 2d 665, 667 (internal citation omitted)).
[83] PPFFCOL, ¶ 105, Doc. 80 at 18–19.
[84] See for example, *Williams v. Rowe-Treaudo*, 11-46, pp. 7–9 (La. App. 5 Cir. 9/27/11); 75 So. 3d 502, 507–508 (where employment contract is implied).
[85] DPFFCOL, ¶¶ 68–73, Doc. 79 at 13–14.
[86] *Id.*, ¶ 72, Doc. 79 at 14.

that the contract between Harang Sugars and Lowry Farms envisioned that Plaintiffs would remain the employees of Lowry,[87] stating in relevant part: "I [Harang Sugars] agree to pay Lowry Farms, Inc. weekly *for the work performed by Lowry Farms, Inc. workers.*"[88] Any work by Plaintiffs which benefitted Harang Sugars was done by operation of Plaintiffs' contract with Lowry Farms and through Lowry Farm's contract with Harang. The fact Plaintiffs' work benefitted Harang Sugars' business enterprise does not establish a contract, express or implied.

The contract between Lowry Farms and Plaintiffs provides further support for Plaintiffs' position. There it states clearly that Plaintiffs were hired by Lowry Farms which paid them, directed them, provided transportation to America and the job site and provided them housing and worker's compensation coverage.[89] This contract envisioned that these workers would remain the employees of Lowry Farms.[90] Accordingly, based on the evidence presented at trial, Plaintiffs have successfully rebutted the presumption that they were employees of Harang Sugars under La. Rev. Stat. Ann. § 23:1044.

***Were Plaintiffs Independent Contractors Doing Manual Labor within the Meaning of La. Rev. Stat. Ann. § 23:1021(7)?***

Farm Bureau contends alternatively that Plaintiffs were independent contractors doing manual labor for Harang Sugars thus immunizing its insured from tort liability.[91]

La. Rev. Stat. Ann. § 23:1021(7) provides:

> (7) "Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his

---

[87] Dep. of Lowry Farms, p. 70, ln. 23–25, p. 71, ln. 1–11, Ex. 35, TRIAL000480–81; Agreement, Ex. 23, TRIAL000625.
[88] *Id.* (emphasis added).
[89] Lowry Discl. & Terms of Employ., Ex. 2, TRIAL000295–296.
[90] "I [Harang Sugars] agree to pay Lowry Farms, Inc. weekly for the work performed by Lowry Farms, Inc. workers." Agreement, Ex. 23, TRIAL000625.
[91] DPFFCOL, ¶¶ 74–88, Doc.79 at 14–19.

work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.

Plaintiffs point the Court to language from the Louisiana Supreme Court to support their contention that an independent contractor falls under the "manual labor exception" of 1021(7) "only when a substantial part of his work time is spent in manual labor in carrying out the terms of *his* contract with the principal and the work performed by him is a part of the principal's trade, business or occupation."[92] Plaintiffs don't dispute that they were performing manual labor at the time they were injured but argue because they had no contract with Harang Sugars, this provision is inapplicable.

Specifically, Plaintiffs argue that the manual labor exception requires that there be (a) an independent contractor; (b) carrying out the terms of the laborer's contract with the principal. Thus, La. Rev. Stat. Ann. § 1021(7) only applies when the manual laborer is in direct contractual privity with the principal.[93] When the relationship in question is – as here – that of the principal to a payroll employee of an intermediate contractor, a more restrictive LWCA provision – La. Rev. Stat. Ann. § 23:1061 – tests whether the payroll employees (in this case, Plaintiffs) of the intermediary contractor (in this case, Lowry Farms) are statutory employees of the principal (in this case, Harang Sugars).[94] Here, Farm Bureau does not contend that Harang Sugars was

---

[92] PPFFCOL, ¶ 107, Doc. 80 at 19, citing *Lushute v. Diesi*, 354 So. 2d 179, 182 (La. 1977) (emphasis added); *see also Steinfelds v. Villarubia*, 10-0975, p. 9 (La. App. 4 Cir. 12/15/10); 53 So. 3d 1275, 1281 (citing *Lushute*, 354 So. 2d at 182, *Miller v. Higginbottom*, 33,594, p. 6 (La. App. 2 Cir. 6/21/00); 768 So. 2d 127, 132; *Guidry v. Gueydan Co-Op. Dryer, Inc.*, 97-874, p. 4 (La. App. 3 Cir. 12/10/97); 706 So. 2d 146, 150).
[93] *Lushute*, 354 So. 2d at 181–82.
[94] *See Kirkland v. Riverwood Int'l USA, Inc.*, 95-1830, pp. 2–3 (La. 9/13/96); 681 So. 2d 329, 331.

Plaintiffs' statutory employer under La. Rev. Stat. Ann. § 23:1061.[95] In sum, argue Plaintiffs, because they had no contract with Harang Sugars, 23:1021(7) does not apply.[96]

Farm Bureau, on the other hand, points the Court to three Louisiana appellate decisions in support of its position that no contractual privity is required between the laborer and the principal in order for this provision to apply.[97] Thus, argues Farm Bureau, the manual labor exception applies here rendering worker's compensation Plaintiffs' exclusive remedy against Harang Sugars.[98]

As stated earlier, this Court sitting in diversity pursuant to 28 U.S.C. Section 1332 must apply Louisiana law.[99] Neither side has pointed the Court to a Louisiana Supreme Court case which has resolved the precise issue before the Court nor has this Court independently found such a case. Under these circumstances, the Court must make an "*Erie* guess" and determine how that court would resolve the issue if presented with the same case.[100]

The Court earlier considered this issue in pretrial motions.[101] There is nothing in the evidence presented by the parties or changes in the law that persuade the Court that its initial decision was wrong. Indeed, the law remains the same, and the facts presented at trial reinforce the Court's original decision. The Louisiana Supreme Court has stated that an independent contractor falls under the "manual labor exception" of 1021(7) "only when a substantial part of *his*

---

[95] Minutes of Motion Hearing for Partial Summary Judgment by Plfs. and Motion for Summary Judgment by Def., Doc. 73 at 9.

[96] PPFFCOL, ¶ 107, Doc. 80 at 20.

[97] *See Lumar v. Zappe Endeavors, L.L.C.,* 06-317 (La. App. 5 Cir. 10/31/06); 946 So. 2d 188; *Courtney v. Fletcher Trucking*, 2012-0434 (La. App. 1 Cir. 12/21/12); 111 So. 3d 411; *Moss v. Tommasi Const., Inc.,* 2009-1419 (La. App. 3 Cir. 5/5/10); 37 So. 3d 492, 497–99, *writ denied*, 2010-1243 (La. 9/17/10); 45 So. 3d 1054; *see also McCarroll v. Prime Cut Lawn Care & Tractor Work, L.L.C.,* No. 2010-1638 (La. App. 1 Cir. 3/25/11); 2013 WL 1189241.

[98] DPFFCOL, ¶¶ 77–88, Doc. 79 at 15–19.

[99] *See supra* notes 75 and 76.

[100] *See supra* notes 75 and 76.

[101] Ruling and Order Denying Plfs. Motion for Partial Summary Judgment and Def. Motion for Summary Judgment, Doc. 71 at 48.

work time is spent in manual labor in *carrying out the terms of **his** contract with the principal* and the work performed by him is a part of the principal's trade, business or occupation."[102] Because Plaintiffs had no contract with Harang, 23:1021(7) simply does not apply.

Farm Bureau points the Court to *Lumar v. Zappe Endeavors, L.L.C*[103] where the Louisiana Fifth Circuit stated: "the Legislature has seen fit to extend workers' compensation coverage to certain independent contractors who perform manual labor and that extension of coverage encompasses tort immunity for the employer who contracts with the laborer." Nevertheless, the Fifth Circuit found that the plaintiff, an employee of a cleaning services company that contracted with the defendant to clean its facilities, was also considered an independent contractor of the defendant's, doing manual labor, and therefore, under 23:1021(7), was barred from recovery in tort.[104] Specifically, the court noted that the plaintiff's employer, Aramark, "performs its duties through its employees, and is liable for the acts of its employees. The limitations applicable to Aramark are also applicable to its employees. Furthermore, La. Rev. Stat. Ann. § 23:1021 does not state that it is not applicable to independent contractors who are partnerships, corporations or other juridical persons, and does not limit itself to independent contractors who are natural persons only."[105] The Third Circuit followed *Lumar* in *Moss v. Tommasi Construction, Inc.* to conclude that the plaintiff there was similarly barred from recovery in tort, noting "[t]he factual relationship vis-a-vis [the plaintiff and defendant] and Lumar and Zappe is identical."[106]

Farm Bureaus further points the Court to *Courtney v. Fletcher Trucking*,[107] in which

---

[102] *Lushute,* 354 So. 2d at 182 (emphasis added); *see also Steinfelds,* 10-0975 at p. 9; 53 So. 3d at 1281 (citing *Lushute,* 354 So. 2d at 182, *Miller,* 33,594 at p. 6; 768 So. 2d at 131; *Guidry,* 97-874 at p. 4; 706 So. 2d at 150).
[103] *Lumar,* 06-317 at pp. 5–6; 946 So. 2d at 190.
[104] *Id.,* 06-317 at pp. 5–6; 946 So. 2d at 191.
[105] *Id.,* 06-317 at p. 6; 946 So. 2d at 191.
[106] *See Moss*, 09-1419 at p. 9; 37 So. 3d at 499.
[107] *Courtney v. Fletcher Trucking,* 2012-0434 (La. App. 1 Cir. 12/21/12); 111 So. 3d 411.

plaintiff, Courtney, filed a workers' compensation claim against both Fletcher Trucking and Maximum Lesiure, LLC after sustaining injuries on a job site. The job site was owned by Maximum Leisure and Fletcher was hired to develop the land. Maximum Leisure argued it was not the employer of Courtney because Courtney was not performing manual labor at the time he was injured (he was driving a dump truck) and it exercised no control over him. Despite these contentions, the First Circuit affirmed the lower court's ruling finding that Courtney was performing manual labor under 23:1021(7)[108] and Maximum Leisure was Courtney's borrowing employer under La. Rev. Stat. Ann. § 23:1031(C).[109]

Plaintiffs insist that *Lumar* and its progeny were incorrectly decided. They note that following *Lumar*, Louisiana courts, including the court that rendered the *Lumar* decision, continue to apply both statutory employer and borrowing employer analyses without consideration of whether the injured plaintiff was engaged in manual labor.[110] They insist this is because 1061, not 1021(7), governs situations such as the instant one, where the disputed relationship involves a principal and the payroll employees of an intermediary and that 1021(7) is wholly inapplicable to the facts of this case.[111]

In applying Louisiana law, the Court finds that the language of 23:1021(7) and the Louisiana Supreme Court's interpretation of same, while dicta to the specific issue before this Court, nonetheless clearly support Plaintiffs' position that 1021(7) only applies to the manual laborer in direct contractual privity with the principal. In *Lushute v. Diesi*, the Louisiana Supreme Court examined the legislative history of the term "independent contractor" as the term is used in

---

[108] *Id*. at pp. 9-10; 111 So. 3d at 417–18.
[109] *Id*. at pp. 10–11; 111 So. 3d at 418–19.
[110] Plf. Opposition to MSJ, Doc. 48 at 7–8 (citing *Daigle v. McGee Backhoe & Dozer Servs*, 08-1183 (La. App. 5 Cir. 4/28/09); 16 So. 3d 4, *reh'g denied, writ denied*, 09-1372 (La. 10/2/09); 18 So. 3d 113).
[111] *Id*.

La. Rev. Stat. Ann. § 23:1021(7).[112] After noting the various legislative amendments to the statute, the first of which dates back to 1914, and the significance of each amendment, the Court "conclude[d] that an independent contractor is covered under the workmen's compensation law only when a substantial part of *his* work time is spent in manual labor in carrying out the terms of *his* contract with the principal and the work performed by *him* is a part of the principal's trade, business or occupation."[113]

In conclusion, the Court finds that Plaintiffs were not independent contractors of Harang Sugars by virtue of the simple fact that there was no contractual privity between the parties. Rather, the only contract to which Plaintiffs were a party was their contract with Lowry Farms. Moreover, as discussed above, Lowry Farms' contract with Harang Sugars expressly indicates that the parties intended for Plaintiffs to remain the employees of Lowry. Thus, Plaintiffs are not independent contractors as defined in La. Rev. Stat. Ann. § 23:1021(7), and the statute does not bar their recovery in tort.[114]

The Court has considered *Lumar, Moss* and *Courtney* but find their holdings to be at odds with the language of 1021(7) and that of the Louisiana Supreme Court interpreting the same.[115] *Lushute* suggests that, in order for 1021(7) to apply, the manual laborer must be engaged in work "carrying out the terms of *his* contract with the principal…"[116] Furthermore, as discussed above, 23:1061 (and not 1021(7)) is the section of Louisiana's worker's compensation law which governs

---

[112] *Lushute*, 354 So. 2d at 181–82.

[113] *Id.* at 182 (emphasis added); *see also Maldonado-Mejia v. Eversound Kitchen & Bath, L.L.C.*, 15-859, p. 7 (La. App. 4 Cir. 4/20/16); 194 So. 3d 1136, 1140 (citing *Lushute*, 354 So. 2d at 182); *Guidry*, 97-874 at p. 4; 706 So. 2d at 150, *on reh'g*.

[114] *See Prejean v. Maint. Enter., Inc.*, 08-0364, p. 10 (La. App. 4 Cir. 3/25/09); 8 So. 3d 766, 772–73. ("While the Legislature acts within its bounds to provide tort immunity to employers, whether they are direct employers or principals… the courts lack authority to extend that tort immunity beyond explicit statutory language[.]")

[115] Even the Louisiana Fifth Circuit seems to have now disowned its *Lumar* decision. *See Daigle v. McGee Backhoe and Dozer Servs*, 08-1183 (La. App. 5 Cir. 4/28/09); 16 So. 3d 4 (Winsberg, J., dissenting and disagreeing with the court's departure from *Lumar*), *reh'g denied*, *writ denied*, 09-1372 (La. 10/2/09); 18 So. 3d 113).

[116] *Lushute*, 354 So. 2d at 182.

a principal's compensation liability to the *employee* of an intermediary independent contractor. In this case, Farm Bureau has disclaimed reliance on 1061.[117] Louisiana Civil Code Articles 12 and 13 support the Court's conclusion by guiding this Court's interpretation of these statutes. Article 12 requires the Court to look to "the text of the law as a whole" if any ambiguity exists and "the context in which [the words] occur."[118] Article 13 requires that statutes "on the same subject matter must be interpreted in reference to each other."[119]

### *Was Harang Sugars a Borrowing Employer of Plaintiffs?*

Louisiana courts utilize a nine or ten factor test to determine whether a borrowed servant relationship exists for purposes of tort immunity.[120] There is often considerable overlap in the factors, and some courts identify some factors as "subfactors" of others.[121] The Court will use the ten factor test:

> (1) first and foremost, who has the right of control over the employee beyond mere suggestion of details or cooperation; (2) who selected the employee; (3) who paid the employee's wages; (4) who had the right to fire the employee; (5) who furnished the tools and the place to perform the work; (6) whether the new employment was over a considerable length of time; (7) whose work was being done at the time of the accident; (8) whether there was an agreement between the borrowing and lending employers; (9) whether the employee acquiesced in the new work situation; and (10) whether the original employer terminated his relationship with or

---

[117] Minutes of Motion Hearing for Partial Summary Judgment by Plfs. and Motion for Summary Judgment by Def., Doc. 73 at 9.

[118] La. Civ. Code. Ann. art. 12

[119] La. Civ. Code. Ann. art. 13.

[120] Farm Bureau points the Court to the nine factor test in *Sanchez v. Harbor Construction Co., Inc.*, 2007-0234, pp. 4–5 (La. App. 4 Cir. 10/3/07); 968 So. 2d 783, 786; DPFFCOL, ¶ 97 Fn. 87, Doc. 79 at 22. Plaintiffs utilize the ten factor test of *Billeaud v. Poledore*, 603 So. 2d 754, 756 (La. App. 1 Cir. 1992), *writ denied*, 608 So. 2d 176 (La. 1992); PPFFCOL, ¶ 123, Doc. 80 at 23. Other than the order in which the factors are listed and the addition of one factor in the ten factor version (who selected the worker?), the tests are identical. The Court also notes that "[b]oth federal and Louisiana law use the same criteria for determining whether an employee is a borrowed employee." *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 616 n.1 (5th Cir. 1986) (citing *Lorton v. Diamond M Drilling Co.*, 540 F.2d 212, 213 n.1 (5th Cir. 1976) (per curiam) (citing *Champagne v. Penrod Drilling Co.*, 341 F. Supp. 1282, 1285 (W.D. La. 1971) *aff'd* 459 F.2d 1042 (5th Cir.1972) (per curiam), *cert. denied*, 409 U.S. 1113, 93 S. Ct. 927, 34 L. Ed. 2d 696 (1973))).

[121] *See, e.g.*, *Shelvin v. Waste Mgmt. Inc.*, 580 So. 2d 1022, 1026 (La. App. 3 Cir. 1991) ("The four primary factors considered in deciding the right of control issue are: selection and engagement; payment of wages; power of dismissal; and power of control."); PPFCCOL, ¶ 122, Doc. 80 at 23.

relinquished his control over the employee.[122]

*First Factor:  Who Had Control Over Plaintiffs?*

"The essence of the employer/employee relationship is the right to control."[123] Thus, the right of control is the "first and foremost" factor in a borrowed employee inquiry.[124] There is a legal presumption that the general employer retains control over his regular employees.  A party who alleges or contends that the employee has become the 'borrowed servant' of another bears the burden of proof of establishing this.[125]

The right of control must be "beyond suggestion of details or cooperation."[126] To illustrate this point, the Louisiana Supreme Court cited a Massachusetts Supreme Court case authored by Justice Holmes, in which he explained:

> In cases like the present, there is a general consensus of authority that, although a driver may be ordered by those who have dealt with the master to go to this place or that, or take this or that burden, to hurry or to take his time, nevertheless in respect to the manner of his driving in the control of his horse he remains subject to no orders but those of the man who pays him.[127]

Farm Bureau argues it had the requisite right to control and points out that, on the first day of planting, Harang explained to the Lowry Farms straw boss how Harang Sugars wanted the cane planted, and the straw boss translated to the planters how to plant Harang Sugar's cane.[128] In

---

[122] *Billeaud*, 603 So. 2d at 756 (citing *Carter v. Chevron Chem. Co.*, 593 So. 2d 942, 947 (La. App. 4 Cir. 1992), *writ denied*, 596 So. 2d 211 (La. 1992), *Brumbaugh v. Marathon*, 507 So. 2d 872, 875 (La. App. 5 Cir. 1987), *writ denied*, 508 So. 2d 284 (La. 1987)); *see also Kelly v. Arch Ins. Co.*, No. 15-772, 2016 WL 3951424 at *10 (M.D. La. June 9, 2016) (Wilder-Dooms, MJ.) (citing *Omega Const, v. Thornco, Inc.*, 07-1806, pp. 4–5 (La. App. 1 Cir. 8/21/08); 994 So. 2d 65, 68).
[123] *Shelvin*, 580 So. 2d at 1026.
[124] *Billeaud*, 603 So. 2d at 756.
[125] *Polozola v. Garlock, Inc.*, 376 So. 2d 1009, 1012 (La. App. 1 Cir. 1979), *writ denied*, 379 So. 2d 1103 (La. 1980), (citing *Nichols Const. Corp. v. Spell*, 315 So. 2d 801, 803 (La. App. 1 Cir. 1975)).
[126] *Billeaud*, 603 So. 2d at 756.
[127] *Benoit v. Hunt Tool Co.,* 219 La. 380, 396, 53 So. 2d 137, 142 (La. 1951) (quoting *Driscoll v. Towle*, 181 Mass. 416, 63 N.E. 922 (Mass. 1902) (Holmes, J.)).
[128] DPFFCOL, ¶ 27, Doc. 79 at 7 (citing Dep. of Harang & Harang Sugars, p. 90, ln. 4–15, p. 158, ln. 23–25, p. 159,

24

explaining why Harang communicated through Lowry Farms' straw boss and did not speak directly with the cane planters, Farm Bureau emphasizes that neither Harang, nor any other supervisor or manager of Harang Sugars could communicate in Spanish with the H-2A laborers who exclusively spoke Spanish.[129]

Farm Bureau maintains that Harang Sugars decided when to begin planting its sugar cane based on Harang's personal judgment and the weather[130] and determined how many acres of sugar cane it would plant in a given year.[131] Harang Sugars was the client paying for a specific service, and, just as in any service contract, Harang Sugars could request corrections to work done incorrectly. It set the place where they began work each day[132] and the order in which it wanted to plant its acres.[133] Farm Bureau insists that Harang Sugars was solely responsible for making sure the planting was done properly and efficiently[134]

It points the Court to testimony that Harang Sugars could dictate how many workers it needed based on the acres it had to plant and the equipment it had available[135] and could dictate the number of pieces of seed cane that would be planted in a furrow.[136] Further, it could reject

ln. 4–9, p. 211, ln. 13–25, p. 212, ln. 1–21, Ex. 34, TRIAL000090, 158–59, 211–12).

[129] *Id.*, ¶ 28, Doc. 79 at 7 (citing Dep. of Harang & Harang Sugars, p. 204, ln. 15–25, p. 205, ln. 1–11, Ex. 34, TRIAL000204–205).

[130] *Id.*, ¶ 32, Doc. 79 at 8 (citing Dep. of Harang & Harang Sugars, p. 221, ln. 3–5, Ex. 34, TRIAL000221; Dep. of Lowry Farms, p. 23, ln. 3–19, p. 159, ln. 4–16, Ex. 35, TRIAL000433, 569).

[131] *Id.*, ¶ 32, Doc. 79 at 8 (citing Dep. of Harang & Harang Sugars, p. 221, ln. 6–10, Ex. 34, TRIAL000221; Dep. of Lowry Farms, p. 128, ln. 20–22, Ex. 35, TRIAL000538).

[132] *Id.*, ¶ 40, Doc. 79 at 8 (citing Dep. of Lowry Farms, p. 38, ln. 1–2, Ex. 35, TRIAL000448).

[133] *Id.*, ¶ 34, Doc. 79 at 8 (citing Dep. of Harang & Harang Sugars, p. 223, ln. 11–14, Ex. 34, TRIAL000223; Dep. of Lowry Farms, p. 128, ln. 4–12, Ex. 35, TRIAL000538).

[134] *Id.*, ¶ 31, Doc. 79 at 8 (citing Dep. of Harang & Harang Sugars, p. 55, ln. 1–10, Ex. 34, TRIAL000055).

[135] *Id.*, ¶ 35, Doc. 79 at 8 (citing Dep. of Harang & Harang Sugars, p. 63, ln. 14–25, p. 64, ln. 1–9, Ex. 34, TRIAL000063–64; Dep. of Lowry Farms, p. 71, ln. 12–21, Ex. 35, TRIAL000481).

[136] *Id.*, ¶ 38, Doc. 79 at 8 (citing Dep. of Harang & Harang Sugars, p. 90, ln. 4–15, p. 208, ln. 23–25, Ex. 34, TRIAL000090, 208).

unsuitable employees and require them to be removed and replaced by Lowry.[137] Harang Sugars determined if work was to be canceled due to bad weather on any given day.[138]

Plaintiffs argue, on the other hand, that Lowry Farms' personnel trained and provided Plaintiffs with their initial orientation and instruction and supervised Plaintiffs while on the job. Control of the specifics of Plaintiffs' duties was exercised by Lowry Farms personnel and Harang Sugars never gave Plaintiffs instructions.[139]

Specifically, Plaintiffs maintain it was Lowry Farms employee Hernandez who provided Plaintiffs with their orientation and initial instruction on how to do their job.[140] Hernandez was the primary person with whom Plaintiffs and the other cane planters communicated.[141] Plaintiffs did not take direction from anyone other than Castillo, Hernandez or Torres.[142] No one from Harang Sugars ever told Plaintiffs how to plant cane.[143]

Ferrell, Lowry Farms' office manager and farmer-crew boss liaison, testified as to the chain of command to the workers at the job site. If the farmer had a problem, the farmer would call Ferrell, who would then contact the crew boss to resolve the issue. If the crew boss had a problem, the crew boss would call Ferrell, who would then contact the farmer to resolve the issue.[144] The Lowry Farms Crew Leaders would report Plaintiffs' hours to Ferrell.[145]

---

[137] Id., ¶ 29, Doc. 79 at 7 (citing Dep. of Harang & Harang Sugars, pp. 209–216, Ex. 34, TRIAL000209–216).

[138] Id., ¶ 41, Doc. 79 at 8 (citing Dep. of Harang & Harang Sugars, p. 226, ln. 4–7, Ex. 34, TRIAL000226; Dep. of Lowry Farms, p. 127, ln. 8–16, Ex. 35, TRIAL000537).

[139] PPFFCOL, ¶ 126, Doc. 80 at 23–24.

[140] Id., ¶ 61, Doc. 80 at 11 (citing Dep. of Jorge-Chevlas, p. 11, ln. 4–13, p. 17, ln. 15–18, p. 54, ln. 4–16, p. 55, ln. 9–19, Ex. 36, TRIAL000640, 646, 683–684; Dep. of Moreno-Abarca, p. 26, ln. 2–12, p. 35, ln. 14–24, Ex. 37, TRIAL000736, 745).

[141] Id. (citing Dep. of Jorge-Chevlas, p. 11, ln. 4–13, p. 17, ln. 15–18, p. 54, ln. 4–16, p. 55, ln. 9–19, Ex. 36, TRIAL000640, 646, 683–684; Dep. of Moreno-Abarca, p. 26, ln. 2–12, p. 35, ln. 14–24, Ex. 37, TRIAL000736, 745).

[142] Id. (citing Dep. of Jorge-Chevlas, p. 11, ln. 4–13, p. 17, ln. 15–18, p. 54, ln. 4–16, p. 55, ln. 9–19, Ex. 36, TRIAL000640, 646, 683–684; Dep. of Moreno-Abarca, p. 26, ln. 2–12, p. 35, ln. 14–24, Ex. 37, TRIAL000736, 745).

[143] Id., (citing Dep. of Jorge-Chevlas, p. 19, ln. 9–11, Ex. 36, TRIAL000648).

[144] Id., ¶ 55, Doc. 80 at 10 (citing Dep. of Lowry Farms, p. 78, ln. 10–25, p. 79, ln. 1–11, p. 81, ln. 24–25, p. 82, ln. 1–11, p. 92, ln. 12–24, Ex. 35, TRIAL000488–89, 491–92, 502).

[145] Id., ¶ 67, Doc. 80 at 12 (citing Dep. of Lowry Farms, p. 35, ln. 21–25, p. 36, ln. 1–2, Ex. 35, TRIAL000445–446).

It was Lowry Farms' "protocol or expectation" that if Plaintiffs had any work-related issue, Plaintiffs would report the issue to their Crew Leader or straw boss. For problems relating specifically to Crew Leader/Recruiters, Lowry Farms supplied Plaintiffs with an office number for Lowry Farms and cell number for owner Clay Lowry.[146]

Ferrell's explanation is consistent with the terms of the Crew Leader/Recruiter Contract, which lists the Crew Leader/Recruiter's duties, including: "Oversee workers in the fields."[147] Harang provided a specific example. During the 2015 planting, Harang was concerned about the pace of planting. He called Ferrell because "that's the – that's the route of me communicating to get things done."[148]

Plaintiffs' contracts with Lowry Farms declare that Plaintiffs are Lowry Farms' employees, and Plaintiffs "will be required to work all hours as directed LF personnel."[149] Nothing in their contracts suggests that the client farmer would have any control over Plaintiffs.[150]

Plaintiffs themselves understood that they were employees of Lowry Farms. They understood that they worked for "Clay Lowry" and that Hernandez and Torres – both Lowry Farms employees – were Plaintiffs' bosses.[151] Jorge Gonzales, a Harang Sugars employee-tractor driver[152] pulling the cart from which Plaintiffs were working, directly observed who was exercising control over Plaintiffs' work. Gonzales observed Hernandez talking to the planters about how they should do their job, every morning. Gonzales understood from what he saw that

---

[146] *Id.*, ¶ 58, Doc. 80 at 11 (citing Dep. of Lowry Farms, p. 60, ln. 15–20, p. 61, ln. 4–16, p. 89, ln. 12–23, Ex. 35, TRIAL000470–71, 499).

[147] *Id.*, ¶ 56, Doc. 80 at 10, citing Lowry Crew Leader Contract, Ex. 4, TRIAL000298–99.

[148] *Id.*, ¶ 57, Doc. 80 at 10.

[149] Lowry Discl. & Terms of Employ., Ex. 2, TRIAL000295–296.

[150] PPFFCOL, ¶ 59, Doc. 80 at 11.

[151] *Id.*, ¶ 60, Doc. 80 at 11 (citing Dep. of Jorge-Chevlas, p. 36, ln. 9–11, p. 55, ln. 6–16, Ex. 36, TRIAL000665, 684; Dep. of Moreno-Abarca, p. 26, ln. 14–18, Ex. 37, TRIAL000736).

[152] Dep. of Gonzalez, p. 8, ln. 1–21, p. 9, ln. 1–5, Ex. 38, TRIAL000759–760.

Hernandez was the supervisor for the cane planters. Gonzales personally observed Hernandez instruct the cane planters and train them how to do their job, every morning.[153]

As to Farm Bureau's argument that orders came from Lowry Farms crew bosses only because Plaintiffs did not speak English and Lee Harang did not speak Spanish, Plaintiffs respond in their supplemental memorandum[154] that Harang Sugars had 5 to 7 employees who spoke Spanish and could, and sometimes did, translate for Harang if and when he wished to communicate directly with a Lowry Farms employee.[155] This included Jorge Gonzales, the tractor driver working with Plaintiffs at the time of the accident.[156]

The Court has carefully reviewed the extensive evidence and argument on this issue of control and concludes that the legal presumption that Lowry Farms retained control has not been rebutted, and, indeed, the great weight of the evidence supports the conclusion that the right of control and its actual exercise remained with Lowry Farms. This "first and foremost factor" weighs heavily against a borrowing relationship. Lowry Farms had sole discretion as to where Plaintiffs would work; it could unilaterally transfer Plaintiffs from Harang Sugars' farm to that of another client without consulting Harang Sugars. As to Farm Bureau's argument that Harang only dealt with Lowry Farms supervisors because of language issues, the Court has reviewed the conflicting evidence on this point and rejects Farm Bureau's position. Lowry Farms, its Crew Leaders and Straw Bosses exercised actual and real control over Plaintiffs and their co-workers and were not merely acting as interpreters to communicate Harang Sugars' directives.

As far as Harang Sugars' decisions regarding what time to begin work; which fields to

---

[153] PPFFCOL, ¶ 65, Doc. 80 at 12 (citing Dep. of Gonzalez, p. 22–28, Ex. 38, TRIAL000773–779).
[154] Plf. Response to DPFFCOL, Doc. 83 at 6.
[155] Dep. of Harang & Harang Sugars, p. 204, ln. 5–11, Ex. 34, TRIAL000204.
[156] Dep. of Gonzales, p. 5, ln. 3–4, Ex. 38, TRIAL000756 (confirming all answers given through certified Spanish interpreter).

work on a particular day; and whether to cancel work for inclement weather, this is precisely the type of "mere suggestion of details or cooperation" that does not support a finding of borrowed employee status. Harang never spoke to or had any interaction with Plaintiffs.[157]

Harang himself acknowledged that Harang Sugars did not have the power to control Lowry Farms' planters.[158] Harang Sugars could make requests of Lowry Farms' planters, but Harang Sugars could not force the planters to do anything.[159] One who has hired a contractor for a particular service may request of his contractor corrections to work the contractor's employee did incorrectly. In doing so, the client does not assume control of his contractor's worker so that the worker becomes the client's borrowed employee; rather, "[the worker] remains subject to no orders but those of the man who pays him."[160] While Harang Sugars could require Lowry Farms to replant cane if Harang Sugars was unsatisfied with the work, Plaintiffs remained subject to no orders but those of the one who paid them, Lowry Farms.

It is true that the nature of the cane planting operation requires coordination between the farmer and the planting service. For instance, the farmer decides when he wants to begin the planting; what he wants the final product to be (e.g., three overlapping stalks of cane in the furrow); how many tractors/drivers he has available, thus suggesting the most efficient number of cane planters (three per tractor/driver); and since tractors/drivers are useless without a planting crew behind them – and planting crews are useless without a tractor/driver in front of them – daily start times, lunch breaks, and quitting times.[161] But Harang Sugars was a client paying for a specific

---

[157] Dep. of Jorge-Chevlas, p. 19, ln. 9–15, Ex. 36, TRIAL000648; Dep. of Gonzalez, p. 19, ln. 4–9, Ex. 38, TRIAL000770; Dep. of Moreno-Abarca, p. 34, ln. 11–13, Ex. 37, TRIAL 000744.
[158] Dep. of Harang & Harang Sugars, p. 95–97, p. 215–218, Ex. 34, TRIAL00095–97, 215–218.
[159] *Id.*
[160] *Benoit*, 219 La. at 396; 53 So. 2d at 142 (quoting *Driscoll*, 181 Mass. 416, 63 N.E. 922 (Holmes, J.)).
[161] Dep. of Harang & Harang Sugars, p. 95, ln. 1–8, Ex. 34, TRIAL000095; Dep. of Lowry Farms, p. 82–85, Ex. 35, TRIAL000492–495.

service, and just as in any service contract, Harang Sugars could request corrections to work done incorrectly. While Harang Sugars could require Lowry Farms to replant cane if Harang Sugars was unsatisfied with the work, Plaintiffs remained subject to no orders other than those of Lowry Farms.

As mentioned elsewhere in this analysis, it is uncontested that Harang Sugars lacked the authority to terminate Plaintiffs' employment. It could not require them to perform other duties that were part of Harang Sugars' operations (such as harvesting mature sugarcane), though it could offer to pay them for such services, if they chose to accept the additional assignment. Its control of the plaintiffs was limited to mere suggestion and details of cooperation, which is an insufficient indicia of control to establish a borrowed employee relationship. No part of this agreement between Harang Sugars and Lowry Farms gave Harang Sugars any control of the Lowry Farms cane planters[162] and, indeed, Harang Sugars did not want any control of the Lowry Farms employees.[163] As such, and without regard to the presumption, the Court concludes that Harang Sugars did not exercise control over Plaintiffs and this factor weighs against borrowed servant status.

*Second Factor: Who Selected Plaintiffs?*

The second factor considers who – as between the general employer and the putative borrowing employer – selected the employee.[164] In this case there were two selection events: (1) the original selection of Plaintiffs to work for the general employer, Lowry Farms and (2), the subsequent selection of Plaintiffs to work in some connection with a particular farmer-client of Lowry Farms. Lowry Farms maintained exclusive control over the entirety of both selection events.

---

[162] Dep. of Harang & Harang Sugars, p. 96, ln. 7–10, Ex. 34, TRIAL000096.
[163] "Q: Is there any agreement that you're aware of that gives Harang Sugars any control, whatsoever, of Lowry Farms cane planters? A. No, sir, and don't want it." *Id.*
[164] *Billeaud*, 603 So. 2d at 756.

Harang Sugars' only involvement in the selection process was an initial request for a certain number of cane planters.[165] But Lowry Farms was not obligated to provide that specific number.[166] For instance, in 2015 Harang Sugars requested 21 cane planters, but Lowry Farms initially brought only 18.[167] Harang Sugars paid the same per acre price regardless of the number of cane planters Harang Sugars requested or Lowry Farms actually brought.[168]

Lowry Farms' Crew Leader/Recruiters went to Mexico and recruited and vetted their cane planters. Lowry Farms, with no assistance from Harang Sugars, handled the entire H-2A visa process.[169] Lowry Farms recruited and vetted the cane planters in Mexico and arranged for their visas. Lowry Farms, without input from Harang Sugars, then transported the cane planters to Louisiana.[170] Once the planters were in Louisiana, Lowry Farms' Crew Leader/Recruiters, without input from Harang Sugars or the other farmers, selected which planters would work and where.[171] Even after Lowry Farms sent the planters to the various farms, Lowry Farms had discretion to move planters from one farm to another for any reason and without input from the client as to which planters would be moved or how many.[172] The record evidence demonstrates that the "who-selects" factor weighs against a borrowing relationship.

*Third Factor: Who Paid Plaintiffs' Wages?*

The third factor considers who, as between the general employer and the putative borrowing employer, paid the employee.[173] Analysis of this factor goes beyond an inquiry of which

---

[165] Dep. of Lowry Farms, p. 16, ln. 3–13, p. 23, ln. 3–19, p. 74, ln. 14–21, Ex. 35, TRIAL000426, 433, 484.

[166] *Id.*, p. 73, ln. 9–14, p. 74, ln. 6–12, Ex. 35, TRIAL000482–483.

[167] *Id.*, p. 73, ln. 24–25, p. 74, ln. 1–22, Ex. 35, TRIAL000482–483.

[168] *Id.*, p. 74, ln. 20–22, Ex. 35, TRIAL000483.

[169] *Id.*, p. 21, ln. 21–25, p. 22, ln. 1–15, p. 49, ln. 20–25, p. 50, ln. 1–25, p. 51, ln. 15–24, p. 95, ln. 13–25, p. 96, ln. 1–25, p. 97, ln. 1–25, p. 98, ln. 1–13, Ex. 35, TRIAL000431–32, 459–461, 505–08.

[170] *Id.*, p. 95, ln. 13–25, p. 96, ln. 1–25, p. 97, ln. 1–25, p. 98, ln. 1–13, Ex. 35, TRIAL000505–508.

[171] *Id.*, p. 24, ln. 7–15, p. 26, ln. 2–25, Ex. 35, TRIAL000434, 436.

[172] *Id.*, p. 45, ln. 3–7, Ex. 35, TRIAL000455.

[173] *Billeaud*, 603 So. 2d at 756.

employer's bank account was used to write the employee's paychecks. Instead, "[t]his factor focuses on which entity provided the funds with which the injured employee was paid."[174]

"When the borrowing employer pays the lending employer and then the lending employer in turn pays his workers, a finding of borrowed servant is supported."[175] When the borrowing employer pays the general employer an hourly rate for the employee's labor, and the general employer in turn pays the employee an hourly rate, the method supports a finding of a borrowing relationship.[176] But this is not what the evidence showed in the present case.

Where the general employer bills the putative employer based on the work performed, and the putative employer does not "simply reimburse" the employee's hourly rate, the general employer retains the obligation to pay the employee's wages.[177] This is the situation which existed in this case. Lowry Farms paid its cane planters an hourly rate[178] and issued the pay checks on a weekly basis, drawn on a Lowry Farms account.[179] Significantly, Lowry Farms invoiced Harang Sugars on a *per-acre* basis while Lowry Farms paid Plaintiffs an hourly rate. Furthermore, Lowry Farms tendered payment of Plaintiffs' wages before collecting payment under its contract with Harang Sugars, [180] thereby bearing the financial risk of payment. [181] Harang Sugars had no input as to when or how Plaintiffs were paid.

The per-acre amount Lowry Farms charged Harang Sugars did not fluctuate based on the

---

[174] *Nguyen v. Weston*, 09-0571, p. 9 (La. App. 4 Cir. 9/9/09); 20 So. 3d 548, 553 (quoting *Sanchez*, 07-0234 at p. 10; 968 So. 2d at 789).
[175] *Id.*
[176] *See Sanchez*, 07-0234 at p. 10; 968 So. 2d at 789.
[177] *See Cobb v. Sipco Servs. & Marine, Inc.*, No. 95-2131, 1997 WL 582821, at *7 (E.D. La. Sept. 19, 1997) (general employer retained obligation to pay where general employer billed alleged borrowing employer for work actually completed by employees, not hours employees worked).
[178] Dep. of Lowry Farms, p. 162, ln. 15–17, Ex. 35, TRIAL000572.
[179] *Id.*, p. 102, ln. 5–19, p. 107, ln. 6–16, Ex. 35, TRIAL000512, 517.
[180] *Id.*, p. 103, ln. 2–9, p. 108, ln. 2–9, p. 109, ln. 12–24, Ex. 35, TRIAL000513, 518–519.
[181] *Id.*, p. 109, ln. 18–24, Ex. 35, TRIAL000519.

number of planters, even if the number changed during the planting season.[182] Lowry Farms determined its payroll schedule and frequency for its cane planters. Harang Sugars had no control over how or when the cane planters were paid. In fact, Harang Sugars' own employees were on a different payroll schedule.[183] This factor weighs against a finding of borrowed employee status.

*Fourth Factor: Who had the right to fire Plaintiffs?*

The fourth factor considers whether the borrowing employer had the authority to terminate the worker's services.[184] The evidence establishes that Lowry Farms had the exclusive authority to fire Plaintiffs and that Harang Sugars had no right to terminate them. Thus, argue Plaintiffs, this factor weighs decidedly against borrowed employee status.[185]

Farm Bureau counters that the question presented is not which employer had the authority to terminate the employee's employment outright but rather, whether the borrowing employer had the authority to terminate the employee's services with the borrowing employer *at its jobsite*.[186] Harang Sugars maintains it would let Lowry Farms or its employees know if it was unhappy with the work being performed and expected Lowry to make changes in light of any unsatisfactory reports from Harang Sugars or if Harang Sugars requested changes to be made.[187] In short, argues Farm Bureau, Harang Sugars retained control over the work of the laborers in its cane fields and could instruct or even have unsatisfactory laborers removed from them.[188]

---

[182] *Id.*, p. 49, ln. 9–19, Ex. 35, TRIAL000459.
[183] Dep. of Harang & Harang Sugars, p. 123, ln. 4–24, Ex. 34, TRIAL000123.
[184] *Billeaud*, 603 So. 2d at 756; *Nguyen*, 09-0571 at p. 9; 20 So. 3d at 553 (citing *Sanchez*, 07-0234 at pp. 9–10; 968 So. 2d at 788–89).
[185] PPFFCOL, ¶ 141, Doc 80 at 26.
[186] DPFFCOL, ¶ 105, Doc. 79 at 27 (citing *Maddox v. Superior Steel*, 2000-1539, p. 7 (La. App. 1 Cir. 9/28/01); 814 So. 2d at 574; *Hall v. Equitable Shipyard, Inc.*, 95-1754, pp. 6–7 (La. App. 4 Cir. 2/29/96) 670 So. 2d 543, 547).
[187] *Id.* (citing Dep. of Harang & Harang Sugars, p. 210, ln. 11–13, Ex. 34, TRIAL000210).
[188] *Id.*

The Court has reviewed the evidence on this point and concludes Farm Bureau overstates its case. Harang testified multiple times that he could not fire a Lowry Farm's employee.[189] Furthermore, he conceded that, rather than having the ability to remove a Lowry Farms' hand with whom he was unhappy, his only recourse was to terminate the entire contract with Lowry Farms.[190] The Court concludes that this factor weighs against Plaintiffs' borrowed employee status.

*Fifth Factor: Who provided the tools and place to perform work?*

The fifth factor considers who provided the tools and place to perform the work.[191] Both sides concede that Harang Sugars provided the tractors, trailers, seed cane, water, and gloves used in the sugarcane planting operation.[192] Plaintiffs argue, however, that Lowry Farms supplied the cane planters with their H-2A visas, transportation to the United States, workers compensation insurance, and transportation from their housing to the particular field they worked each day. Lowry Farms also provided transportation to the grocery store and to the place where the cane planters cashed their payroll checks. Lowry Farms brought them to their particular farm assignment, and, when done, to another farm assignment or back to Mexico.[193]

If one reads the requirements under this factor narrowly, this factor favors the borrowed servant status of Plaintiffs. However, if read broadly to include items and services necessary for Harang Sugars' work to be performed by the H-2a workers, then it is a closer call. However, interpreting the words "tools and place to perform work" literally, this factor favors borrowed servant status.

---

[189] Dep. of Harang & Harang Sugars, p. 210, ln. 21–23, p. 215, ln. 21–25, p. 216, ln. 1–11, Ex. 34, TRIAL000210, 215–16.

[190] *Id.*, p. 210, ln. 15–24, Ex. 34, TRIAL000210.

[191] *Billeaud*, 603 So. 2d at 756.

[192] Dep. of Harang & Harang Sugars, p. 223, ln. 15–20, p. 231, ln. 1–13, Ex. 34, TRIAL000223, 231.

[193] PPFFCOL, ¶ 83, Doc. 80 at 14–15 (citing Dep. of Lowry Farms, p. 30, ln. 9–20, p. 40, ln. 12–20, p. 21, ln. 15–25, p. 42, ln. 1–19, p. 57, ln. 12–25, p. 58, ln. 1–21, p. 59, ln. 18–23, p. 96, ln. 12–25, p. 97, ln. 1–8, Ex. 35, TRIAL000440, 450–53, 467–69, 506–07).

*Sixth Factor: Was the "new employment" over a considerable length of time?*

The sixth factor considers whether the "new employment" was over a considerable length of time.[194] Typically, when the new employment is over a considerable length of time, the factor weighs in favor of a borrowing relationship.[195]

Harang Sugars' planting in 2015 lasted for a period of only four or five weeks.[196] It was never intended that Plaintiffs' work on Harang Sugars' farm for longer than this, and, in fact, they had worked there for just three weeks at the time they were injured.[197] Had Plaintiffs not been injured, Lowry Farms could have, at the completion of the job, sent Plaintiffs to another job site to plant cane on another client's farm.[198]

Especially in light of the fact that an entire crop cycle (from seed planting through harvesting) can last years, it cannot reasonably be said that Plaintiffs' employment, which could not have lasted longer than five weeks, was a "considerable" period of time. This factor weighs against a finding of borrowed employee status.

*Seventh Factor: Whose work was being performed?*

The seventh factor considers whose work was being performed.[199] Here, reasonable arguments are made on both sides. One could logically argue that Plaintiffs were performing Lowry Farms' work because Lowry Farms is in the business of planting sugarcane. Lowry Farms was rendering a service for Harang Sugars through Plaintiffs pursuant to a contract between Lowry Farms and Harang Sugars. On the other hand, one can logically conclude that Plaintiffs were

---

[194] *Billeaud*, 603 So. 2d at 756.
[195] *See Robertson v. Blanchard Contractors, Inc.*, No. 11-1453, 2012 WL 6202988, at *13 (E.D. La. Dec. 12, 2012).
[196] Dep. of Harang & Harang Sugars, p. 98, ln. 11–13, Ex. 34, TRIAL000098.
[197] Dep. of Jorge-Chevlas, p. 9, ln. 22–23, p. 17, ln. 7–13, Ex. 36, TRIAL000638, 646; Dep. of Moreno-Abarca, p. 10, ln. 18–21, Ex. 37, TRIAL000720.
[198] Dep. of Moreno-Abarca, p. 37, ln. 5–12, Ex. 37, TRIAL000747.
[199] PPFFCOL, ¶ 145, Doc. 80 at 27 (citing *Billeaud*, 603 So. 2d at 756).

performing the work of Harang Sugars' business: it was Harang Sugars' sugarcane that was being planted on Harang Sugars' property for the ultimate purpose of allowing Harang Sugars to cultivate and harvest it. While close, the Court finds Harang Farms has the better side of the argument. Thus, the Court finds that this factor favors borrowed employment status.

*Eighth Factor: Did an agreement exist between Lowry Farms and Harang Sugars?*

The eighth factor considers whether there was some agreement between putative borrowing and putative lending employers evidencing a discussion and understanding of the employees' status, and specifically whether there was any indicia of control.[200] In *Dupre v. Sterling Plate Glass & Paint Co., Inc.*, 344 So. 2d 1060 (La. App. 1 Cir. 1977) *writ denied* 347 So. 2d 246 (La. 1977) the court stated that "the concept of the 'borrowed employee' doctrine, by its terms, connotes an agreement of some type between the lender and the borrower, that the lender relinquished such control of the employee to the borrower." 344 So. 2d at 1064 (citing *Ruiz v. Shell Oil Co*., 413 F.2d 310 (5th Cir. 1969)). The only agreement between Lowry Farms and Harang Sugars was the April 21, 2015 letter agreement and rate sheet.[201]  It provides, in pertinent part:  "I [Harang Sugars] agree to pay Lowry Farms, Inc. weekly for the work performed by Lowry Farms, Inc. workers."[202]

Thus, the plain language of the only agreement between Harang Sugars and Lowry Farms establishes that the parties intended that Plaintiffs remain Lowry Farms' employees while working on Harang Sugars' property. No part of this agreement gave Harang Sugars control of the Lowry Farms cane planters[203] and, indeed, Harang Sugars did not want any control of the Lowry Farms employees.[204] This factor weighs against borrowed servant status.

---

[200] *Id.*
[201] Dep. of Lowry Farms, p. 71, ln. 5–11, Ex. 35, TRIAL000481.
[202] Agreement, Ex. 23, TRIAL000625.
[203] Dep. of Harang & Harang Sugars, p. 96, ln. 7–10, Ex. 34, TRIAL000096.
[204] "Q: Is there any agreement that you're aware of that gives Harang Sugars any control, whatsoever, of Lowry Farms cane planters? A. No, sir, and don't want it." *Id.*

*Ninth Factor: Did the employee acquiesce in the new work situation?*

The ninth factor asks whether Plaintiffs acquiesced in the new work situation.[205] While Plaintiffs understood that they were planting seed for Harang Sugars on Harang Sugars' farm, they likewise understood that they did so as Lowry Farms' employees and would report to a Lowry Farms-employed supervisor if there was an issue at the jobsite. Plaintiffs similarly turned to Lowry Farms' employees if they had an issue off the worksite, such as with their housing or cashing their checks. The Court finds there was no acquiescence of these workers to employment for Harang Sugars. This factor weighs against borrowed servant status.

*Tenth Factor: Did Lowry Farms terminate its relationship with or relinquish control over Plaintiffs?*

The final factor considers whether the general employer terminated its relationship with its employee or relinquished control over him.[206] "In order to find that a relationship has been terminated, this factor requires that the nominal employer place no restrictions upon the employment conditions of its employees."[207]

Louisiana law dictates a presumption that the general employer retains control of his employee. Thus, the party asserting borrowed employee status must show that "the right of the general employer to control the employee has terminated, and that the right to control him has been assumed by the borrowing employer."[208] A sufficient showing is made only where it is demonstrated that the "general employer gives up control to [the] borrowing employer."[209]

---

[205] *Billeaud*, 603 So. 2d at 756.

[206] PPFFCOL, ¶ 150, Doc. 80 at 28 (citing *Billeaud*, 603 So. 2d at 756).

[207] *Id.*, ¶ 151, Doc. 80 at 28 (citing *Foreman v. Danos & Curole Marine Contractors, Inc.*, 97-2038, p. 10 (La. App. 1 Cir. 9/25/98); 722 So. 2d 1, 6, *writ denied*, 98-2703 (La. 12/18/98); 734 So. 2d 637 (citing *Canty v. A. Bottacchi, S.A. de Navegacion*, 849 F. Supp. 1552, 1554 (S.D. Fla. 1994)).

[208] *Polozola*, 376 So. 2d at 1012, (citing *Nichols Const. Corp*, 315 So. 2d at 803).

[209] PPFFCOL, ¶ 153, Doc. 80 at 29 (citing *Andrew-Hong v. Gray Ins. Co.*, 06-0093, p. 3 (La. App. 4 Cir. 11/2/06); 945 So. 2d 124, 126).

"A mere showing of a division of control is not sufficient to meet th[e] burden of proof [that the general employer retains control over his regular employees]."[210]

As mentioned in connection with the Court's discussion of an earlier factor, the plain language of the only agreement between Harang Sugars and Lowry Farms establishes that the parties intended that Plaintiffs remain Lowry Farms employees while working on Harang Sugars' property. No part of this agreement gave Harang Sugars control of the Lowry Farms cane planters,[211] and, indeed, Harang Sugars did not want any control of the Lowry Farms employees.[212]

Another factor evidencing that Lowry Farms did not cede control and remained the employer of Plaintiffs is the pay structure between Harang Sugars and Lowry Farms and Lowry Farms and its workers. As mentioned above, Lowry Farms charged its clients by the acre and paid its workers by the hour. This arrangement is further evidence of the understanding between all concerned that the cane planters would remain employees of Lowry Farms.

*Conclusion Regarding Plaintiffs' Alleged Borrowed Servant Status*

After weighing the disputed and undisputed evidence on this issue, the Court concludes that Plaintiffs did not become the borrowed servants of Harang Sugars. Of the ten factors, eight favor this conclusion and two favor borrowed servant status. The Court's conclusion is strengthened by its finding that the most important of these, the right of control, clearly militates against borrowed servant status.

**Was Harang Sugars a Special or Joint Employer of Plaintiffs under. La. Rev. Stat. Ann. § 23:1031(c) and/or H-2A Regulations?**

---

[210] *Polozola*, 376 So. 2d at 1012 (citing *Nichols Const. Corp.*, 315 So. 2d at 803).
[211] Dep. of Harang & Harang Sugars, p. 96, ln. 7–10, Ex. 34, TRIAL000096.
[212] "Q: Is there any agreement that you're aware of that gives Harang Sugars any control, whatsoever, of Lowry Farms cane planters? A. No, sir, and don't want it." *Id.*

Farm Bureau argues alternatively that even if Harang Sugars did not become the sole employer by way of the borrowed servant doctrine, Harang Sugars and Lowry Farms were nonetheless Plaintiffs' "dual," "joint," or "special" employers under Louisiana law, with each being responsible for payment of workers' compensation benefits and each having immunity from tort.[213] La. Rev. Stat. Ann. § 23:1031(C) provides in pertinent part:

> In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. . . . The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.[214]

Farm Bureau argues that Lowry Farms was a general employer in the business of renting out laborers and Harang Sugars was special employer whose work was being performed at the time of the accident. Therefore Harang Sugars and Lowry Farms were dual employers for the purposes of potential tort liability to third persons.[215] More importantly for the major issue, Farm Bureau maintains that Harang Sugars and Lowry Farms were solidarily responsible under Louisiana workers' compensation law for benefits due to their joint employees arising out of work performed at Harang's Sugars' farm.[216]

Farm Bureau points the Court to *McGinnis v. Waste Mgmt. of Louisiana, L.L.C.*,[217] which it contends is directly on point. Here, the Louisiana Second Circuit held that borrowed employee status existed for a plaintiff who was the general employee of a temporary employment agency and the special employee of Waste Management in connection with its waste collection services.

---

[213] DPFFCOL, ¶ 89, Doc. 79 at 21.
[214] La. Rev. Stat. Ann. § 23:1031; DPFFCOL, ¶ 92, Doc. 79 at 22.
[215] DPFFCOL, ¶ 95, Doc. 79 at 23 (citing *Morgan v. ABC Mfr.*, 97-0956 (La. 5/1/98); 710 So. 2d 1077).
[216] *Id.*
[217] *McGinnis v. Waste Mgmt. of Louisiana, L.L.C.*, 40,330 (La. App. 2 Cir. 10/26/05); 914 So. 2d 612.

The Court found the two companies were joint employers of the plaintiff, and both were obligated under Louisiana workers' compensation laws rather than in tort. The court held that the scenario presented was precisely the type of situation contemplated by the La. Rev. Stat. Ann. § 23:1031(C) – "that of a worker employed by, and under the control and direction of, the special employer at the time of his injury."[218] Because the commercial insurance policy issued by Waste Management's insurer excluded any obligation for which Waste Management might be liable under workers' compensation law, the immunity enjoyed by the special and general, or joint, employers excluded coverage for the insurer.[219]

Louisiana's Revised Statutes do not provide a definition of "special employer" or "general employer." However, state courts have held that these terms, and the test used to determine whether one falls under one or the other, is analogous to the test for "borrowed employer" status.[220] Indeed, Farm Bureau concedes that the test for dual employment is essentially the same as the borrowed employee test previously detailed.[221] However, they urge that the result of the analysis should be that "the plaintiffs…were 'borrowed employees' under La. Rev. Stat. Ann. § 23:1031(c) because the laborers at Harang Sugars' farm were under the control and direction of Harang Sugars at all times."[222] The Court disagrees. For the reasons previously given by the Court in connection with its analysis of the borrowed servant issue, the Court finds that Harang Sugars was not a special, joint or dual employer of Plaintiffs.

---

[218] *Id.* at pp. 8–9; at 617.
[219] DPFFCOL, ¶ 96, Doc. 79 at 23–24 (citing *McGinnis*, 40,330 at pp. 8–9; 914 So. 2d at 617).
[220] *See McGinnis*, 40,330 at pp. 6–7; 914 So. 2d at 616 (citing *Vaughn v. BFI Waste Sys. Of North Am.*, 01-1105 (La. App. 4 Cir. 7/25/01); 793 So. 2d 410; *Clarendon Nat'l Ins. Co. v. Jeansonne & Remondet L.L.C.*, 37,765 (La. App. 2 Cir. 10/23/03); 859 So. 2d 877, *writ denied*, 04-0002 (La. 3/12/04); 869 So. 2d 826) (applying the nine-factor borrowed employee test to determine whether the defendant was a special employer under La. Rev. Stat. Ann. § 22:1031(C)); *Hebert v. Richard*, 10-1417, pp. 4, 10 (La. App. 3 Cir. 7/6/11); 72 So. 3d 892, 897, 900 (citing *Green v. Popeye's Inc.*, 619 So. 2d 69, 73 (La. App. 3 Cir. 1993) (quoting *Billeaud*, 603 So. 2d at 756))) (finding the test for special employer under La. Rev. Stat. Ann. § 22:1031(C) is the same as the nine-factor test under the borrowed employee doctrine).
[221] DPFFCOL, ¶ 94, Doc. 79 at 23.
[222] *Id.*, ¶ 107, Doc. 79 at 28.

Ordinarily, in order for a party to claim dual or joint employer status, that party must establish that the right of the general employer to control the employee has ended and that the right to control him has been assumed by the borrowing employer.[223] A mere showing of a division of control is not sufficient to rebut the presumption that a general employer retains control over his regular employees.[224] In any event, the Court finds that Harang Sugars never exercised control of Plaintiffs so as to give it borrowed or joint employer status.

Farm Bureau makes, as Plaintiffs correctly note, a "straw man" argument charging that "Plaintiffs' urge that there can be only one employer in the instant case" and then cite law supporting the notion of joint or dual employment.[225] Plaintiffs respond that first, they never made this argument and second, "the point Farm Bureau ignores is that the dual liability under 1031(C) arises *only when **there is first** a borrowing situation*. In other words, had Plaintiffs become Harang Sugars' borrowed employees, both Harang Sugars and Lowry Farms would be jointly liable for workers compensation benefits under 1031(C). But if, as Plaintiffs contend, Plaintiffs never became borrowed or "special" employees of Harang Sugars, there can be no dual employment under 1031(C)."[226]

The Court agrees with Plaintiffs. For the reasons detailed above, Harang Sugars never became the borrowing employer of Plaintiffs and therefore cannot be their dual, joint or special employer.

**Applicability of H2-A Regulations and Definitions**

In support of its contention that Harang Sugars was Plaintiffs' sole, special, joint or dual employer, Farm Bureau points the Court to the regulatory definitions promulgated by the

---

[223] *Polozola*, 376 So. 2d at 1012 (citing *Nichols Const. Corp.*, 315 So. 2d at 803).
[224] *Id.*
[225] Plf. Response to DPFFCOL, Doc. 83 at 4 (quoting and citing Doc. 79 at 19–22, ¶¶ 89–96).
[226] *Id.*, emphasis added.

Department of Labor governing the H-2A visa program. It also urges that the federal statute and regulations are relevant to the issue of insurance coverage.

Specifically, Farm Bureau urges that Plaintiffs should be considered Harang Sugars' employees under the H-2A federal regulations.[227] It further argues that under the regulatory definitions promulgated by the U.S. Department of Labor ("DOL") governing the H-2A visa program, Harang Sugars and Lowry Farms must, at a minimum, be considered Plaintiffs' joint employers.[228] It urges the Court to apply an "economic realities" test to determine whether the two companies were Plaintiffs' joint employers under H-2A regulations.[229] Alternatively, it alleges Harang Sugars and Lowry Farms were "special employers" under the LWCA, and avers that the test for special employers under Louisiana law is analogous to the test for joint employer under H-2A regulations and/or supported by it.[230]

In short, Plaintiffs respond that Farm Bureau's H-2A argument is misguided and is an improper comparison of "apples to oranges."[231] They argue that the "economic realities" test urged by Farm Bureau is derived from the definition of "employ" under the Fair Labor Standards Act (FLSA), which DOL uses to support the remedial purpose of giving H-2A visa workers the broadest protections possible.[232]

In any event, argue Plaintiffs, even if the Court were to consider Harang an "employer" under H-2A regulations, this is wholly irrelevant to the dispositive inquiry here, which is whether Plaintiffs were Harang Sugars' employees as defined by the liability policy issued by Farm

---

[227] DPFFCOL, ¶¶ 108–117, Doc. 79 at 26–29.
[228] *Id.*
[229] *Id.*, ¶¶ 114, 117, Doc. 79 at 30.
[230] Def. Response to PPFFCOL, Doc. 82 at 2–3.
[231] *See generally* PPFFCOL, ¶¶ 110–120, Doc. 80 at 20–22.
[232] *Id.*, ¶¶ 110–111, Doc. 80 at 20 (citing 29 U.S.C. § 203(g)); *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam), *modified* 861 F.2d 450 (5th Cir. 1988); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S. Ct. 1344, 117 L. Ed.2d 581 (1992); *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996); *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 347 (5th Cir. 2008))).

Bureau.[233] Because the term "employee" is not specifically defined in that policy, the term must be given its ordinary and usual meaning, which in this case, render Plaintiffs beyond the purview of employee status under the policies.[234]

As stated above, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, and is therefore bound to apply Louisiana state law.[235] There is no Louisiana Supreme Court decision addressing the argument Farm Bureau raises here, and therefore, the Court must again make an *Erie* guess to determine the soundness of its argument. As discussed below, the Court is confident that the Louisiana Supreme Court would not extract a statutory definition from the FLSA and apply it to issues arising exclusively under state law, i.e. employer/employee status for purposes of worker's compensation, tort liability and insurance coverage.

The Court notes the dearth of jurisprudence Farm Bureau offers in support of its novel argument that Harang Sugars is the joint employer for liability purposes based upon the H-2A regulations. Furthermore, the Court finds that although the Plaintiffs in this case were in the United States on H-2A visas issued by DOL, the dispute at issue here does not implicate their status as H-2A laborers, nor does it involve application of the administrative regulations promulgated by the DOL.

The central inquiry of this dispute is, as Plaintiffs correctly note, whether or not Plaintiffs were "employees" for purposes of Louisiana law and Harang Sugars' liability policies issued by Farm Bureau. This inquiry and the pertinent analysis would remain unchanged if Plaintiffs were Lowry Farms' employees recruited locally rather than from Mexico. Every other argument urged by Farm Bureau involves the application of Louisiana state law; it offers no logical or principled

---

[233] *Id.*, ¶¶ 112–120, Doc. 80 at 2–22.
[234] *Id.*, ¶ 118, Doc. 80 at 21–22 (citing *Savoie v. Fireman's Fund Ins. Co.*, 347 So. 2d 188, 191 (La. 1977).)
[235] *See James*, 743 F.3d at 69; *Am. Int'l Specialty Lines*, 352 F.3d at 260.

reason why the Court should apply language from federal regulations subject to administrative review.

The Fifth Circuit noted that "[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications."[236] This jurisprudence makes clear that FLSA terms are unique to the FLSA and transplanting their distinctive definitions to issues arising under state law is not a practice in which Courts should engage. Accordingly, the Court declines Farm Bureau's invitation to do so here and holds that whatever definition of "employer" or "joint employer" is provided by the FLSA, it is wholly inapposite to the dispute at the heart of this case.

### *Was Harang Sugars the Statutory Employer of Plaintiffs under La. Rev. Stat. Ann. § 23:1061?*

Although Farm Bureau alleges that Plaintiffs were independent contractors engaged in manual labor as defined in La. Rev. Stat. Ann. § 23:1021(7), Plaintiffs counter that Section 1021(7) is inapplicable here because that provision of the Louisiana Workers' Compensation Act applies only to instances where the principal is obligated to provide coverage to an individual in direct contractual privity with the principal as an independent contractor, which is not the case here.[237] Instead, Plaintiffs assert that the relevant provision is actually La. Rev. Stat. Ann. § 23:1061, which "applies to the contractor's employees vis-à-vis the contractor's principal."[238]

Plaintiffs are correct that La. Rev. Stat. Ann. § 23:1061 "provides guidance as to when a *contractor's employee*, rather than a contractor himself, may recover under the principal's

---

[236] *McLaughlin*, 867 F.2d at 877; *see also Walling v. Portland Terminal Co.*, 330 U.S. 148, 150, 67 S. Ct. 639, 640, 91 L. Ed. 809 (1947) ("…in determining who are 'employees' under the [FLSA], common law employee [sic] categories or employer-employee classifications under other statutes are not of controlling significance… This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category." (citation omitted)).

[237] Plf. Opposition to MSJ, Doc. 48 at 4.

[238] *Id*. at 6 (emphasis omitted).

worker's compensation liability."[239] Such is the case here. Plaintiffs worked for Harang Sugars by operation of Plaintiffs' contract with Lowry Farms, and Lowry Farm's contract with Harang Sugars. There was no contractual privity between Plaintiffs and Harang Sugars.

Nonetheless, nowhere in its briefing has Farm Bureau alleged tort immunity through the application of La. Rev. Stat. Ann. § 23:1061 and Plaintiffs argue that, while the appropriate article governing this kind of situation, Farm Bureau has conceded 1061 does not apply here.[240] In its briefing, Farm Bureau did not contend otherwise. At the oral argument on pretrial motions held on February 9, 2017, the Court pointedly asked counsel for Farm Bureau its position on the applicability of La. Rev. Stat. Ann. § 23:1061, to which counsel replied that Farm Bureau had not taken a position on the issue.[241] When asked what Farm Bureau's position on the issue was at that juncture, counsel represented that he would not be arguing the applicability of 1061, as it was his belief that there were more effective vehicles to bar Plaintiffs' recovery in tort.[242] Nowhere in pre-trial or post-trial briefing has Farm Bureau argued for tort immunity based on 1061 and the Court finds none on its own.

### Do Farm Bureau's Policies Cover the Loss?

Farm Bureau's farm liability and umbrella policies exclude coverage for tort liability for injuries to employees; coverage for such claims is provided by worker's compensation and employer's liability policies, and not general or farm liability policies.[243] Farm Bureau argues that Plaintiffs are either employees of Harang Sugars or independent contractors engaged strictly in manual labor and, as such, Plaintiffs' exclusive remedy against Harang is in workers'

---

[239] *Guidry*, 97-874 at p. 4; 706 So. 2d at 150 (emphasis original).
[240] *See* Plf. Opposition to MSJ, Doc. 48 at 5 n.13.
[241] Minutes of Motion Hearing for Partial Summary Judgment by Plfs. and Motion for Summary Judgment by Def., Doc. 73 at 9.
[242] *Id.*
[243] DPFFCOL, ¶ 118, Doc. 79 at 31.

compensation and therefore, given the policies' exclusions, there is no coverage available for the Plaintiffs' or Intervenor's claims under either policy.[244]

Plaintiffs argue, to the contrary, they are neither employees nor independent contractors engaged in manual labor, and therefore no policy exclusion applies to exclude coverage. As to Farm Bureau's attempted reliance on FLSA regulations and its definitions, Plaintiffs argue that the word "employee" in an insurance contract must be given its ordinary and usual meaning.[245] This is particularly so because the Farm Bureau policies do not define "employee."[246]

"[A]bsent an indication of a different meaning in an insurance contract, the word 'employee' understood in its common and usual sense, signifies one who is a party to an employment contract, express or implied."[247] Thus, argue Plaintiffs, Farm Bureau's attempt to use the FLSA and H-2A regulations and graft upon the insurance policies as well as Louisiana law "the broadest definition [of 'employee'] that has ever been included in any one act"[248] and one that "cover[s] some parties who might not qualify as such under a strict application of traditional agency law principles"[249] – runs against the word "in its common and usual sense" and should be rejected.

The Court agrees. As previously discussed above in a different context, the FLSA and H-2A definitions are inapplicable for the use for which Farm Bureau attempts to put them. Accordingly, the Court finds the policy exclusions relied upon do not apply.

*Conclusion*

---

[244] *Id.*, ¶ 119.

[245] Plf. Response to DPFFCOL, Doc. 83 at 4 (citing *Savoie* 347 So. 2d at 191).

[246] PPFFCOL, ¶ 52, Doc. 80 at 9 (citing Liability Policy, Ex. 27, TRIAL000804–875).

[247] *Id.*, quoting *Savoie* at 191.

[248] Plf. Response to DPFFCOL, Doc. 83 at 5 (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3, 65 S. Ct. 295, 296, 89 L. Ed. 301 (1945)).

[249] *Id.*, (quoting *Nationwide*, 503 U.S. at 326).

Plaintiffs are neither employees of Harang Sugars nor independent contractors performing manual labor within the meaning of Louisiana's workers compensation laws. In addition, there are no exclusions to coverage for these claims under the Farm Bureau policies. There is therefore no legal impediment to Plaintiffs' tort claims against Harang Sugars, Smith and its farm liability and umbrella insurers.

Therefore, in accordance with the stipulations reached among the parties, the Court renders judgment in favor of Alejandro Jorge-Chavelas and against Farm Bureau in the amount of $1,937,500. The Court renders judgment in favor of Alfredo Moreno-Abarca and against Farm Bureau in the amount of $562,500. Legal interest is awarded on both awards from date of judicial demand until paid. Within seven days the parties shall submit a judgment which incorporates this ruling and details the amounts owed under each Farm Bureau policy as well as any relief owed to Intervenor American Interstate Insurance Company.

Signed in Baton Rouge, Louisiana, on March 9, 2018.


**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**